BIG TEN CONFERENCE, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (2nd Division)   No. 1—98—3499

Opinion filed February 22, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Edmund C. Baird, Assistant Attorney General, of counsel), for appellant.

Sonnenschein Nath & Rosenthal, of Chicago (Jeffrey L. Dorman, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

In 1995 Big Ten Conference, Inc. (the Big Ten), applied for a property tax exemption for a building in Park Ridge, Illinois. The Department of Revenue (Department) denied the application. The Big Ten

requested a hearing before the Department's Office of Administrative Hearings. The administrative law judge (ALJ) recommended denial of the application, and the Director of the Department adopted the recommendation. The Big Ten then sought administrative review of the Director's decision. The trial court reversed the Director and ordered the Department to grant the Big Ten the property tax exemption. The Department appeals.

A group of Midwestern universities formed the Big Ten. According to the Big Ten's certificate of incorporation,

> "Its specific organizational purposes are: (1) to control and regulate intercollegiate athletics as institutional activities; (2) to encourage sound academic practices for student athletes and (3) to establish harmonious intercollegiate relationships among member institutions."

The Big Ten's bylaws echo this statement of purpose. In its handbook the Big Ten states that it

> "recognizes the transcendent priority of a student-athlete's academic collegiate experience. It places its highest values upon high academic standards. The student-athlete is student first, athlete second."

Therefore, "[s]tudent-athletes have the right to regularly prepare for and attend classes and final examinations without significant interruption from athletic participation," and each institution "will only permit a schedule of practice, training and competition which will result in a minimum loss of class time and minimum conflict with a student-athlete's final examination schedule."

The Internal Revenue Service granted the Big Ten an exemption from income tax, and the Department exempted the Big Ten from use and related sales taxes.

The Big Ten purchased the Park Ridge property in 1990. It used the building as a work site for administrative personnel, clerical workers and support staff. The employees negotiated contracts on behalf of the member universities, hosted promotional luncheons, monitored compliance with applicable rules, and assigned referees to various athletic events. It offered no classes on a regularly scheduled basis.

The Big Ten distributed $43.5 million to member universities in 1994. Most of the money came from contracts for televised coverage of athletic events. The Big Ten also earned revenues totalling more than $4.2 million that year, while incurring almost $3.9 million in expenses.

The ALJ found that the Big Ten played no role in accreditation and established no academic standards or other admission policies for its members. It published no journal or directory of admission requirements and performed no evaluative functions related to admission.

Instead, it coordinated business aspects of members' athletic programs. Although the ALJ found the Big Ten "undoubtedly reduce[d] the administrative costs associated with such programs to constituent members," he found this insufficient to qualify the property as one used for an educational purpose within the meaning of section 15—35(c) of the Property Tax Code (the Code) (35 ILCS 200/15—35(c) (West 1996)). The Director adopted the ALJ's findings and his recommendation for denial of the application for an exemption.

■ We deem the Director's findings of facts *prima facie* true and correct. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998). Because agencies interpret statutes based on experience and expertise, the courts substantially defer to an agency's construction of a statute that the agency administers and enforces. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03, 545 N.E.2d 695 (1989); *Moncada v. Illinois Commerce Comm'n*, 212 Ill. App. 3d 1046, 1052-53, 571 N.E.2d 1004 (1991). But the agency's decision on a question of law does not bind the courts. *Belvidere*, 181 Ill. 2d at 205. The court should not reverse the Director on a mixed question of fact and law unless the decision is clearly erroneous. *Belvidere*, 181 Ill. 2d at 205.

■ Section 15—35 of the Code exempts from property tax all "property *** used for *** educational purposes." 35 ILCS 200/15—35(c) (West 1996). We construe the exemption strictly, resolving all debatable questions in favor of taxation. *Chicago & Northeast Illinois District Council of Carpenters Apprentice & Trainee Program v. Department of Revenue*, 293 Ill. App. 3d 600, 605, 688 N.E.2d 721 (1997). The party seeking an exemption bears the burden of clearly and convincingly proving entitlement to the exemption. *Chicago & Northeast Illinois District Council of Carpenters Apprentice & Trainee Program*, 293 Ill. App. 3d at 606.

The Code exempts the property at issue here if the Big Ten uses the property for educational purposes. The Code does not further define the educational purposes entitling the property owner to an exemption. Our supreme court has held that property need not be directly devoted to classwork to qualify for an exemption. *Association of American Medical Colleges v. Lorenz*, 17 Ill. 2d 125, 128, 160 N.E.2d 763 (1959).

> "[T]he fact that church property is used for a dormitory, refectory, nursery for growing trees and shrubs to beautify the premises, a baseball diamond and tennis courts, swimming, boating and skating does not preclude a finding that it is exempt on the ground of use for school or religious purposes. [Citation.] A similar conclusion has been reached with respect to residence halls, dining rooms and

club houses as well as baseball, football and bowling facilities, when used as an adjunct of 'educational processes.' " *Lorenz,* 17 Ill. 2d at 128-29.

In *Lorenz,* as here, a group of colleges formed a separate organization to perform some administrative functions. Our supreme court held that the organization's property qualified for a property tax exemption. The court said:

"Where the functions themselves qualify for exemption it does not matter that they are performed by a separate organization rather than by the respective member institutions. It is not the policy of the law to penalize efficiency or to favor duplication of effort." *Lorenz,* 17 Ill. 2d at 129.

The Big Ten uses its property for administration of intercollegiate sports programs. The work involves negotiation of television contracts for coverage of some intercollegiate games. The court in *National Collegiate Realty Corp. v. Board of County Commissioners,* 236 Kan. 394, 690 P.2d 1366 (1984), needed to decide whether similar activities advanced educational purposes. There, as here, a state statute exempted real estate from property tax if the property was used exclusively for educational purposes. *National Collegiate Realty Corp.,* 236 Kan. at 395, 690 P.2d at 1368. The plaintiff used the land as national headquarters for the National Collegiate Athletic Association (NCAA). The Board of Tax Appeals (BTA) denied the plaintiff's request for a property tax exemption, but the trial court, on administrative review, reversed. The Kansas Supreme Court said:

"The NCAA is involved exclusively with regulating and promoting intercollegiate athletic events among its member colleges and universities. There is no serious contention that, generally speaking, physical education and sports programs in universities are not within proper 'educational purposes' and we must conclude they are educational. \*\*\*

\*\*\* [A]thletic activities of schools are substantially related to their educational functions.

\* \* \*

\*\*\* Were the question before us the NCAA's ability to pay ad valorem taxes, the answer would be a resounding, 'Yes!' But such is not the issue.

Sports are a legitimate part of collegiate education. Whether collegiate football and basketball, as they presently exist, are too large and too commercial are philosophical questions outside the issues of this action. No authority has been cited nor has our research disclosed any instance where a university's football stadium or gymnasium has been held taxable on the basis such facilities are commercial or entertainment facilities. The present large size of

the NCAA arises from the great popularity with the general public of collegiate football and basketball events. This popularity spawns a myriad of problems such as improper recruiting practices which only the NCAA can properly control. The reasoning applied by the BTA appears to be that at some point a collegiate sport may cease to be an educational activity and become merely entertainment. Presumably an intercollegiate sporting event such as archery which would be attended primarily by friends and relatives of the athlete is educational, but should the public interest in archery ignite with sufficient intensity, then the sport would become merely entertainment. The logic of this argument is difficult to follow.

\* \* \*

The activities of the NCAA are varied including rule making, publication and dissemination of information, investigation of recruiting violations and discipline thereof, and promoting championship events. These activities are but parts of the whole program and are so integrated as to preclude separate consideration of the various components. We conclude that the subject property, the national headquarters of the NCAA, is property used exclusively for educational purposes." *National Collegiate Realty Corp.*, 236 Kan. at 400-05, 690 P.2d at 1372-75.

The court affirmed the trial court's decision granting the tax exemption.

■ We are persuaded by the reasoning of *National Collegiate Realty Corp.* The administration of intercollegiate athletic programs is a legitimate educational activity. As the ALJ found, the Big Ten reduces administrative costs for its members. The athletic events so arranged also raise considerable revenue for the schools, but this revenue does not alter the underlying educational character of the activity. Because the Big Ten used its property solely for educational purposes, we affirm the trial court's decision requiring the Department to grant the Big Ten the property tax exemption.

Affirmed.

COUSINS, P.J., and McBRIDE, J., concur.