SIXTH DIVISION

December 29, 2000

No. 1-98-4586

ROGY'S NEW GENERATION, INC., ) Appeal from the

ROGY'S GINGERBREAD HOUSE, INC., and ) Circuit Court of

ROGY'S CHILD CARE CENTER, INC., ) Cook County.

)

Plaintiffs-Appellants, )

)

v. ) No. 97 L 50791

)

THE DEPARTMENT OF REVENUE and )

KENNETH E. ZEHNDER, Director of the ) 

Department of Revenue, ) The Honorable

) 
Thomas P. Quinn
,

Defendants-Appellees. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal from a final decision of the circuit court affirming the decision of the Illinois Department of Revenue (DOR) to deny the application for tax-exempt status to Rogy's New Generation, Inc., and to revoke the tax-exempt status of Rogy's Gingerbread House, Inc., and Rogy's Child Care Center, Inc. (col-lectively Rogy).  There are three issues raised in this appeal:  (1) whether Rogy's facilities qualify as statutorily defined entities organized exclusively for educational purposes; (2) whether the DOR's denial and revocation of Rogy's tax-exempt status violates Rogy's due process rights; and (3) whether the DOR's procedures for reviewing exemption revocations comply with the Administrative Procedure Act )5 ILCS 100/1 
et seq.
 (West 1998)).

I.  BACKGROUND

Rogy's New Generation, Inc., Rogy's Gingerbread House, Inc., and Rogy's Child Care Center, Inc., are Illinois for-profit corporations that claim tax-exempt status under the Retailers' Occupation Tax Act (35 ILCS 120/1 
et seq.
 (West 1998)), and the Use Tax Act (35 ILCS 105/1 
et seq.
 (West 1998)) as entities "organized and operated exclusively for *** educational purposes."  35 ILCS 120/2-5(11) (West 1998); 35 ILCS 105/3-5(4) (West 1998).

The amended articles of incorporation of each Rogy facility  states as its corporate purpose that it is organized:

"exclusively for educational purposes and to provide systematic instruction in useful branches of learning by methods common to public school and which compare favorably in their scope and intensity with the course of study presented in tax supported schools."

Each Rogy facility is also licensed by the Department of Children and Family Services (DCFS) as a day care center.

On June 3, 1991, the DOR issued tax exemption certificates to Rogy's Gingerbread House, Inc., and Rogy's Child Care Center.  In the letters of exemption, the DOR stated that "we are of the opinion that [Rogy's Gingerbread House, Inc., and Rogy's Child Care Center, Inc., are] organized and operated exclusively for educa-tional purposes."  The certificates were issued for a period of five years.  Prior to the expiration thereof, in April 1996, each corporation applied for a renewal of its tax-exempt status.  The DOR granted the requested renewals and again issued certificates with a five-year term.

On May 8, 1996, Rogy's New Generation, Inc., applied for tax-exempt status, claiming exemption as a corporation organized exclu-sively for educational purposes.  After requesting and being pro-vided with further information from Rogy's New Generation, Inc., the DOR denied the application.
(footnote: 1)  In a letter dated October 8, 1996, the DOR informed Rogy that it had determined that Rogy's New Generation, Inc., did not qualify for tax-exempt status in Illinois.  Further, the DOR informed Rogy that it had reviewed the tax-exempt status of three related corporations--Rogy's Gingerbread House, Inc., Rogy's Child Care Center, Inc., and Rogy's Child Care Center of Morton, Inc.
(footnote: 2), and determined that they also do not qualify for tax-exempt status.  Rogy was therefore informed that the exempt status of these organizations was revoked effective October 8, 1996.  Rogy was also informed that it could request a hearing if it disagreed with the decision; Rogy did so.

An evidentiary hearing took place before an administrative law judge (ALJ) on January 8, 1997.  Two witnesses testified at the hearing:  Richard Ward Rogy and Norma Richards.  Richard Rogy, corporate secretary and treasurer of each Rogy facility, provided testimony as to the corporate minutes of each facility. In addition, he identified numerous exhibits, such as the exemption letters from the DOR, which were admitted into evidence.  Richard Rogy further testified that Cathy Raiborn is the curriculum coordi-nator for the Rogy facilities.  As the curriculum coordinator, Raiborn is in charge of setting up the curriculum and training the teachers at each facility.  Raiborn did not testify.

Norma Richards testified on behalf of Rogy as an expert in early childhood education.  Her credentials include:  an assistant professorship in the college of education at National Lewis University; a position as chairperson of the early childhood department at National Lewis University; a masters' of education degree in early childhood instructional leadership from the Univer-ity of Illinois at Chicago; and a doctoral candidacy in education psychology at National Lewis University.

Richards testified that she reviewed the written curriculum of the Rogy facilities and visited one facility, although she could not remember which.  She stated her opinion that "the Rogy's school's classrooms *** are departmentally appropriate" and "educationally sound."  She arrived at this conclusion by observing "infant and toddler and adult relationships, how adults supported children's language, development thinking, critical thinking, exploration and so on."  She "looked for an environment in the classroom that was appropriate for the age group of the children, and *** saw educational materials and instructional materials that were very appropriate."

Richards further testified that the Rogy facilities' curricu-lum was consistent with the standards established by the National Academy of Early Childhood Programs.  She stated that the infant and toddler program was "educational in scope," meaning that the children demonstrated "curiosity, initiative, [and] a sense of basic trust."  In addition, she stated that the materials used sup-ported an "educational purpose."  She further testified that the preprimary program was also "educational in scope," meaning that she "saw children who were able to work in small groups in a classroom with materials that were consistent with their educa-tional level."  In addition, she stated that the "[c]hildren's cri-tical thinking skills were acknowledged and supported.  Children's ability to construct understanding by using materials was certainly supported.  Language development was clearly supported in preemer-gent activities in literacy with children."  She further testified that she saw developmentally appropriate playing materials dealing with math, science, social studies, art, and literature.

Richards finally testified that, in her opinion, the early childhood educational program offered by Rogy compares favorably in its scope and intensity with the courses of study presented in public schools, and that Rogy offers systematic instruction and useful learning by methods common to schools.

Thereafter, on June 12, 1997, the ALJ issued a recommendation for disposition, which was adopted by the DOR on June 13, 1997.  The DOR found that Rogy failed to demonstrate by clear and convincing evidence that its facilities fell within the statutory exemption for educational entities.  The DOR stated that, first, Rogy did not show that its facilities offered a "course of study which fits into the general scheme of education offered by the State"; and second, Rogy failed to prove that its provision of services to prekindergarten children would lessen the State's burden by providing educational training that would "otherwise have to be furnished by the State."  The DOR also rejected Rogy's due process arguments.

II.  ANALYSIS

A. STANDARD OF REVIEW

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 1998)), we review the administra-tive agency's decision, not the circuit court's determination.  See 
XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202, 207 (1999).  An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence.  See 
XL Disposal Corp.
, 304 Ill. App. 3d at 207.  Questions of law decided by an administrative agency are not entitled to deference, however, and are reviewed 
de novo
.  See 
XL Disposal Corp.
, 304 Ill. App. 3d at 207.  

The issue in this case cannot be neatly characterized as either one of law or fact.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  The ALJ's finding is factual, in part, because it involves a determination of the purposes for which Rogy's facilities were organized and operated.  The ALJ had to consider whether the facts in this case support a finding that Rogy's facilities are institutions "orga-nized and operated exclusively for *** educational purposes."  35 ILCS 105/3-5(4)(West 1998); 35 ILCS 120/2-5(11)(West 1998).  The ALJ's finding also concerns a question of law because the scope of the educational exemption is statutorily defined and, thus, requires interpretation.  35 ILCS 105/2c (West 1998); 35 ILCS 120/2h (West 1998).  Consequently, because this case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law and the ALJ's determina-tion should be affirmed unless clearly erroneous.  See 
XL Disposal Corp.
, 304 Ill. App. 3d at 207.

"Clearly erroneous" is said to rest somewhere between the "manifest weight of the evidence" standard and the 
de novo
 standard, requiring us to afford some deference to the agency's experience and expertise.  
City of Belvidere
, 181 Ill. 2d at 205.  Under this standard, we must accept the administrative agency's findings unless we are " 'left with the definite and firm conviction that a mistake has been committed.' "  
Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust
, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64 113 S. Ct. 2264, 2279 (1993), quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 541-42 (1948).

In addition, on administrative review, this court has the power to affirm or reverse an agency's decision in whole or in part (735 ILCS 5/3-111(a)(5), 3-113 (West 1998)), and also to affirm the decision on any basis appearing in the record.  See 
Habinka v. Human Rights Comm'n
, 192 Ill. App. 3d 343, 372 (1989).

We also note that it is well established that statutes granting tax exemptions must be strictly construed in favor of taxation (
Christian Action Ministry v. Department of Local Government Affairs
, 74 Ill. 2d 51, 62 (1978)), and the party claim-ing an exemption has the burden to prove clearly and conclusively that it is entitled to exemption. See 
Telco Leasing, Inc. v. Allphin
, 63 Ill. 2d 305, 310 (1976).  Moreover, courts have no power to create exemption from taxation by judicial construction (
People ex rel. Cannon v. Southern Illinois Hospital Corp.
, 404 Ill. 66, 68 (1949)), and each individual claim must be determined from the facts presented.  See 
Coyne Electrical School v. Paschen
, 12 Ill. 2d 387, 394 (1957).  All facts are to be construed and all debatable questions resolved in favor of taxation.  
City of Chicago v. Illinois Department of Revenue
, 147 Ill. 2d 484, 491-92 (1992).

B. ORGANIZED AND OPERATED EXCLUSIVELY FOR EDUCATIONAL PURPOSES

Rogy's first argument on appeal is that the DOR "arbitrarily and capriciously, and contrary to law, determined that plaintiffs were disqualified from tax-exempt status under [the Retailers' Occupation Tax Act and the Use Tax Act]."

Under the Retailers' Occupation Tax Act and the Use Tax Act, some retail sales are exempt from taxation.  At issue here is the exemption provided under both acts for entities "organized and operated exclusively for *** educational purposes."  35 ILCS 120/2-5(11)(West 1998); 35 ILCS 105/3-5-4 (West 1998).  The scope of the educational exemption is defined by statute, in pertinent part, to include:

"all tax-supported public schools; private schools which offer systematic instruction in useful branches of learning by methods common to public schools and which compare favorably in their scope and intensity with the course of study presented in tax-supported schools; licensed day care centers as defined in Section 2.09 of the Child Care Act of 1969 [(225 ILCS 10/1 
et seq. 
(West 1998))] which are operated by a not for profit corporation, society, association, foundation, institution or organization[.]"  35 ILCS 105/2c (West 1998); 35 ILCS 120/2h (West 1998).

Case law provides that to qualify for an educational exemption, a private entity must meet two prerequisites:  (1) it must "offer a course of study which fits into the general scheme of education established by the State"; and (2) "the course of instruction must lessen the tax burden of the public by providing an education which would otherwise have to be furnished by the State."  
Yale Club v. Department of Revenue
, 214 Ill. App. 3d 468, 474 (1991).  This two-prong test was first articulated by the Illinois Supreme Court in a number of property tax exemption cases (see 
Coyne Electrical School v. Paschen
, 12 Ill. 2d 387, 393 (1957); 
Illinois College of Optometry v. Lorenz
, 21 Ill. 2d 219 (1961)
), and is applicable to the sales tax exemption.  See 
Yale Club
, 214 Ill. App. 3d at 476.

Under the facts presented, we find that Rogy cannot meet either prong of the two-part test.  As noted by the circuit court, the fundamental flaw in Rogy's case is that the State does not provide, nor mandate, education for children under the age of five.  See 105 ILCS 5/10-20.12 (West 1998).  As a result, Rogy cannot prove that its program fits into the "general scheme of education founded by the State" because similar programs do not exist.  Nor can Rogy prove that its programs "lessen the tax burden of the public by providing an education which would otherwise have to be furnished by the State."  Because education is not required for children under the age of five, there is no governmental obligation to educate these children and, therefore, no corresponding public tax burden to bear.  See, 
e.g.
,
 
Chicago & Northeast Illinois Dis-trict Council of Carpenters Apprentice & Trainee Program v. Depart-ment of Revenue
, 293 Ill. App. 3d 600, 611 (1997) (carpentry pro-gram not entitled to tax exemption because the state is not required to fund or offer such a program); 
American College of Chest Physicians v. Department of Revenue
, 202 Ill. App. 3d 59, 61 (1990) (no exemption because no Illinois requirement for continuing medical education); 
Board of Certified Safety Professionals of the Americas, Inc. v. Johnson
, 112 Ill. 2d 542, 546 (1986) (no exemp-tion because no Illinois requirement for the certification of "safety professionals").

Rogy attempts to analogize this case to 
Illinois College of Optometry v. Lorenz
, 21 Ill. 2d 219 (1961), wherein the supreme court found that the Illinois College of Optometry (ICO) offered a course of study that fit into the general scheme of education established by the State and lessened the tax burden of the public even though the State of Illinois had not established a separate school or college of optometry nor was a department of optometry included in existing tax-supported schools.  Rogy asserts that, based on 
Illinois College of Optometry
, we cannot rely on the fact that the State neither mandates nor provides education for children under the age of five.  We disagree.  In 
Illinois College Optome-try
, the court specifically found that the University of Illinois offered the same courses taught by the ICO and that the same courses offered by each were necessary to become qualified to practice optometry.  Thus, the court concluded that the ICO offered a course of instruction which duplicates that offered in public schools.  Moreover, the court reasoned that if the ICO did not operate, then the right to practice optometry could only be gained by attaining a medical degree with a specialization in ophthalmo-logy.  As a result, the tax burden of maintaining medical schools would be greater.  The situation in the case at bar is not similar.

Accordingly, for the above reasons we hereby conclude that Rogy's cannot meet its burden under either prong of the two-prong test.

Moreover, even if the above was not dispositive, the evidence presented by Rogy falls short of establishing that it offers a course of study which fits into the general scheme of education established by the State.  Cathy Raiborn, Rogy's curriculum coordi-nator, failed to testify.  Richard Rogy testified that he had no expertise in the area of Rogy's curriculum.  And although Norma Richards, no doubt an expert in the field of early childhood education, testified that Rogy's programs are "developmentally appropriate" and "educationally sound," her testimony was conclu-sory at best.  Richards also testified that Rogy's programs are "consistent with the standards established by the National Academy of Early Childhood"; however, no testimony was offered as to the relevance of this fact.  Accordingly, we  agree with the DOR's conclusion that the testimony was insufficient to meet the first prong of the test enunciated in 
Coyne
.

Rogy also asserts that the DOR's "sole reliance" on the fact that Rogy operates for-profit day care centers was in error because the statutes involved contain no such disqualifying language.  We note however that the DOR's decision was not based solely on that factor.  Indeed, the DOR specifically found that Rogy did not prove by clear and convincing evidence that it was a corporation organized and operated exclusively for educational purposes.  Because we agree with the DOR's conclusions, we need not determine whether for-profit day care centers are 
per se
 excluded from tax exemption under the definition of entities organized for educational purposes.

C.  DUE PROCESS

Rogy next contends that it was denied due process of law because the DOR did not provide a hearing prior to denying Rogy's request for an exemption.

As the DOR asserts, it is well established that "a State need not provided pre-deprivation process for the exaction of taxes."  
McKesson Corp. v. Division of Alcoholic Beverages & Tobacco
, 496 U.S. 18, 37, 110 L. Ed. 2d 17, 36, 110 S. Ct. 2238, 2250 (1990); see also 
Bob Jones University v. Simon
, 416 U.S. 725, 746 n. 20, 40 L. Ed. 2d 496, 514 n. 20, 94 S. Ct. 2038, 2050 n. 20 (1974) (noting that the Court has dismissed "out of hand" for at least the previous 60 years, claims that posttax assessment or collection appeals are wanting in due process)

Accordingly, we find that Rogy was not denied due process of law.

D.  ADMINISTRATIVE PROCEDURE ACT

Finally, Rogy argues that the DOR's procedures for reviewing exemption revocations fail to comply with the Administrative Procedure Act (Procedure Act) (5 ILCS 100/1 
et seq.
 (West 1998)).

Rogy contends that the Procedure Act requires the DOR "promul-gate rules of procedure which provide for notice and an opportunity to be heard prior to taking any action" and cites section 10-25 of the Procedure Act in support.  However, all that is required under that section is that "all parties shall be afforded an opportunity for a hearing after reasonable notice."  5 ILCS 100/10-25 (West 1998).  Rogy was given such an opportunity.  Accordingly, we reject this argument.

CONCLUSION

Based on the foregoing, we hereby affirm the order of the circuit court which affirmed the decision of the DOR and we remand for assessment of the taxes incurred during the pendency of this administrative review action.

Affirmed and remanded.

Campbell, P.J., and O'Brien, J., concur.

FOOTNOTES
1:
Specifically, in a letter of June 26, 1996, the DOR asked Rogy to provide copies of its Department of Children and Family Services day care license and its 501(c)(3) (26 U.S.C.A. §501 (c)(3) (West Supp. 1996)) exemption letter from the Internal Revenue Service.  Rogy responded by letter of July 9, 1996, submitting a copy of its day care license, but noting that it did not have an IRS exemption.

2:
Rogy's Child Care Center of Morton, Inc., is not a party to this appeal.