SIXTH DIVISION
April 25, 2008

No. 1-07-0624

| | | |
|---|---|---|
| ILLINOIS BETA HOUSE FUND CORPORATION, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 04 L 50223 |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, and BRIAN A. HAMER, | ) | Honorable |
| Director, Department of Revenue, | ) | Rita M. Novak, |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Illinois Beta House Fund Corporation appeals from an order of the circuit court of Cook County affirming the finding of defendant Illinois Department of Revenue that real property owned by plaintiff is not exempt from taxation for the year 2000. The subject real property is the Phi Delta Theta Fraternity House, situated at 5625 South University Avenue, Chicago, 60637, near the main campus of the University of Chicago. The plaintiff argues it is entitled to an exemption under section 15-35(c) of the Property Tax Code (35 ILCS 200/15-35 (West 1998)), because its residential real estate is being "used for *** college, *** university or other educational purposes."

The real property is used primarily to provide housing to male students of the University of Chicago who are members of the Illinois Beta Chapter of the Phi Delta Theta Fraternity. Occasionally, rooms are rented to nonmembers of the Illinois Beta Chapter and one such person resided in the house during 2000. The property has been used as a fraternity house (residence)

since 1958. The house is a brick three-story structure providing approximately 7,000 square feet of living space, including its attic and basement, and is on an 8,500 square foot lot. It has 21 rooms, consisting of 12 bedrooms which each accommodate one-to-three individuals and 9 rooms devoted to study, dining, recreation, and storage. Residents of the house have access to a kitchen where they may prepare their own food, but most take their meals in the school's dining halls. It is undisputed that residents of the fraternity house and residents of the University of Chicago's dormitories use the respective facilities in comparable ways. Property taxes on the fraternity house have been assessed and paid as follows: $17,996.28 for 1999, $13,853.30 for 2000, and $14,213.58 for 2001.

The plaintiff owner of the house, Illinois Beta House Fund Corporation (Beta House Fund), was organized under the Illinois General Not for Profit Corporation Act of 1986 (705 ILCS 105/101.01 *et seq.* (West 1998)), and is tax-exempt under section 501(c)(7) of the Internal Revenue Code. 26 U.S.C. §501(c)(7) (2000). According to its articles of incorporation, the purposes of the corporation are: "charitable, benevolent, eleemosynary, educational and social." Further, "The corporation will promote and foster the social and fraternal principles of Phi Delta Theta Fraternity at the University of Chicago, and engage in other pleasure, recreation and nonprofit[] activities." According to section 2 of its bylaws, the corporation's "principal object *** is to *** maintain a Chapter House in [Chicago] for beneficent, charitable, and educational purposes for students *** at actual cost to those able to pay for same or at no cost for those unable to pay ***; [and] a free library shall be maintained at said Chapter House along with electronic facilities and access to promote the advancement of sound learning." Section 3 of the

corporation's bylaws state Beta House Fund's activities shall include "representing the members of [the fraternity] before all who may have business concerned with Illinois Beta," "owning, supervising, acquiring and disposing of real estate," and "fostering united action and promoting unbroken concourse of all members of [the fraternity]." Beta House Fund's sole assets are the real property at issue and bank accounts and insurance policies maintained for the property's use and upkeep. Expenses associated with the real property are met by reinvested excess rental income and alumni donations.

Based on these facts and precedent concerning section 15-35 of the Property Tax Code (35 ILCS 200/15-35 (West 1998)), the administrative law judge determined the property was not in exempt ownership or in exempt use. The Director of the Department of Revenue found the analysis and reasoning persuasive and adopted it as his own. Beta House Fund appealed to the circuit court of Cook County, but was unable to convince the court the disposition was in error. Beta House Fund seeks further review here.

We review the decision of the agency rather than the circuit court. *Rogy's New Generation, Inc. v. Department of Revenue*, 318 Ill. App. 3d 765, 770 (2000); 735 ILCS 5/3-101 *et seq.* (West 1998). In a case such as this one, when an agency is required to interpret a statute's meaning and determine whether the facts of the case fit within that definition, the case is said to involve an examination of the legal effect of a given set of facts, or present a mixed question of fact and law, which should be affirmed unless clearly erroneous. *Rogy's*, 318 Ill. App. 3d at 770. The clearly erroneous standard requires us to give some deference to the agency's expertise and experience with the statute it is charged with administering. *Rogy's*, 318 Ill. App. 3d at 770. We

must accept the agency's findings unless we come to the definite and firm conviction that a mistake has been committed. *Rogy's*, 318 Ill. App. 3d at 770. Moreover, we may affirm the agency's decision on any basis appearing in the record. *Rogy's*, 318 Ill. App. 3d at 771.

The general rule is that all property is subject to taxation unless specifically exempted by statute. *Swank v. Department of Revenue*, 336 Ill. App. 3d 851, 855 (2003). Section 6 of article IX of the Illinois Constitution restricts the General Assembly's power to exempt. Ill. Const. 1970, art. IX, §6; *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 297 (1994). Permissible exemptions are confined to "property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, §6; *Chicago Bar Ass'n*, 163 Ill. 2d at 297. Statutory tax exemptions are always construed narrowly and strictly in favor of taxation. *Swank*, 336 Ill. App. 3d at 855. Moreover, the party claiming the benefit of an exemption bears the burden of proving clearly and conclusively that it is entitled to the exemption, and all facts and all debatable questions are resolved in favor of taxation. *Rogy's*, 318 Ill. App. 3d at 771.

Plaintiff Beta House Fund contends it met this burden and was entitled to relief from taxation pursuant to subsection (c) of the following statute:

> "15.35. Schools. All property donated by the United States
> for school purposes, and all property of schools, not sold or leased
> or otherwise used with a view to profit, is exempt, whether owned
> by a resident or non-resident of this State or by a corporation
> incorporated in any state of the United States. Also exempt is:

(a) property of schools which is leased to a municipality to be used for municipal purposes on a not-for-profit basis;

(b) property of schools on which the schools are located and any other property of schools used by the schools exclusively for school purposes, including, but not limited to, student residence halls, dormitories and other housing facilities for students and their spouses and children, staff housing facilities, and school-owned and operated dormitory or residence halls occupied in whole or in part by students who belong to fraternities, sororities, or other campus organizations;

(c) property donated, granted, received or used for public school, college, theological seminary, university, or other educational purposes, whether held in trust or absolutely;

(d) in counties with more than 200,000 inhabitants which classify property, property *** on or adjacent to *** the grounds of a school, if that property is used by an academic, research or professional society, institute, association or organization which serves the advancement of learning in a field or fields of study taught by the school and which property is not used with a view to profit.   35 ILCS 200/15-35 (West 1998).[1]

---

[1]   The statute has been amended to include "property owned by a school district."

1-07-0624

Although section 15-35(c) does not specify a taxpayer must be a nonprofit entity to qualify for exemption, this requirement is imposed by the first paragraph of section 15-35. *Swank*, 336 Ill. App. 3d 851 (determining that because phrase "not sold or leased or otherwise used with a view to profit" restricts 15-35(c)'s application, properties held for profit, even if they are used for educational purposes, are not tax-exempt). Plaintiff Beta House Fund's status as a not-for-profit entity is undisputed.

Plaintiff Beta House Fund first argues on appeal is that real estate can be "used for *** college, *** university, or other educational purposes" within the meaning of section 15-35(c) by any not-for-profit entity, and that the applicant for tax exemption need not be a school or other educational institution itself. 35 ILCS 200/15-35(c) (West 1998). Beta House Fund relies primarily on two cases in which nonschools were granted educational use property tax exemptions, *Ass'n of American Medical Colleges v. Lorenz*, 17 Ill. 2d 125 (1959), and *Big Ten Conference, Inc. v. Department of Revenue*, 312 Ill. App. 3d 88 (2000). Stated another way, Beta House Fund contends the test for exemption under section 15-35(c) is strictly use. 35 ILCS 200/15-35(c) (West 1998). Having framed the issue as one of use only, Beta House Fund next contends it is using the property "in substantially the same way as school-owned dormitories," which are tax-exempted by other parts of section 15-35 concerning the "property of schools" (35 ILCS 200/15-35 (West 1998))[2], and that the fraternity house "should not be given inferior

*See* 35 ILCS 200/15-35(e) (West 2000); Pub. Act 91-513 (eff. August 14, 1999).

[2] Section 15-35's initial sentence states, "all *property of schools*, not sold or leased or otherwise used with a view to profit, is exempt." (Emphasis added.) 35 ILCS 200/15-35(West

-6-

treatment [under section 15-35(c)]." We do not find Beta House Fund's arguments persuasive.

We find no similarity between the cases Beta House Fund is relying upon and its own circumstances. The plaintiff in *Ass'n of American Medical Colleges v. Lorenz* was a not-for-profit corporation whose general purpose was "to improve medical education in the United States" by playing a role in the admission requirements, curricula, and accreditation of medical schools. *Lorenz*, 17 Ill. 2d at 126. The association published a journal and a directory detailing admission requirements and other information about medical schools, sponsored admission tests, compiled information about students which could be used to develop instruction programs, critiqued school curricula, and assisted in accreditation. *Lorenz*, 17 Ill. 2d at 127. Medical schools throughout the country were members of the association and they contributed "substantial" funding to the organization each year. *Lorenz*, 17 Ill. 2d at 126. Hospitals and individuals were also allowed to join, but they were not given voting privileges. *Lorenz*, 17 Ill. 2d at 126. Even though "exemption provisions must be strictly construed, and taxation upheld if there is any doubt about the matter," the supreme court concluded the tasks performed by the association of schools were the type envisioned by the legislature. *Lorenz*, 17 Ill. 2d at 129. The court reasoned it was unnecessary for the respective member educational institutions to perform

1998). Similarly, section 15-35(b) provides, "[Also exempt is:] *property of schools* on which the schools are located and any other property of schools used by the schools exclusively for school purposes, including, but not limited to, student residence halls, dormitories and other housing facilities for students ***." (Emphasis added.) 35 ILCS 200/15-35 (West 1998). Beta House Fund does not claim to be a school.

the functions themselves in order to qualify for exemption. *Lorenz*, 17 Ill. 2d at 129. Furthermore, "It is not the policy of the law to penalize efficiency or to favor duplication of effort. If ways of doing things have become outmoded or replaced by more efficient and realistic methods of management, the law will look to the substance, not the mere forms." *Lorenz*, 17 Ill. 2d at 129.

A similar administrative offshoot was addressed in *Big Ten Conference*, 312 Ill. App. 3d 88. A group of Midwestern universities formed a corporation to negotiate contracts for television coverage of intercollegiate sports, host promotional events, monitor compliance with applicable rules, and assign referees to athletic events. *Big Ten Conference*, 312 Ill. App. 3d at 89. The analysis in *Lorenz* and a Kansas case regarding the property taxes of the national organization for intercollegiate sports, the National Collegiate Athletic Association (commonly known as the "NCAA"), led this court to conclude that the Big Ten organization qualified for an educational use exemption. *Big Ten Conference*, 312 Ill. App. 3d at 91, citing *Lorenz*, 17 Ill. 2d 125, *National Collegiate Realty Corp. v. Board of County Commissioners*, 236 Kan. 394, 690 P.2d 1366 (1984). Like the medical school association and the national intercollegiate sports association, the Big Ten sports association was performing some of the administrative tasks of its member schools and reducing their individual administrative expenses. *Big Ten Conference*, 312 Ill. App. 3d at 92. This court deemed these administrative functions a "legitimate educational activity" (*Big Ten Conference*, 312 Ill. App. 3d at 92), and reiterated the supreme court's conclusion that a school's administrative functions may be performed by a separate organization and yet still qualify for a property tax exemption. *Big Ten Conference*, 312 Ill. App. 3d at 91.

Because the Big Ten conference "used its property solely for educational purposes," it qualified for educational use exemption. *Big Ten Conference*, 312 Ill. App. 3d at 92.

Another plaintiff with sufficient ties to a learning institution for purposes of the Property Tax Code (35 ILCS 200/15-35(c) (West 1998)) was a media corporation which was incorporated by the president of the University of Illinois at Urbana-Champaign; remained under the authority of the university chancellor; and educated full-time students in the field of mass communications by employing them to operate the campus radio station, publish the university newspaper, produce the university yearbook, and compile a technical journal. *Illini Media Co. v. Department of Revenue*, 279 Ill. App. 3d 432, 434 (1996). The non-profit corporation was closely affiliated with the school and functioned on the school's behalf to educate students in a particular field. The Department of Revenue argued that classifying the media corporation's use of real property as "educational" would open the statutory tax exemption to " 'virtually any not-for-profit entity that gives students "hands on" experience.' " *Illini Media Co.*, 279 Ill. App. 3d at 437. The supreme court disagreed, pointing out that each case must be decided on its particular facts, and that not "just 'any not-for-profit entity' would be subordinate to the [chancellor], employ over 700 students of the [university], be governed by the students and faculty of the [university], have students in positions of leadership of the enterprise, have a specific mission with respect to the students of the [university], maintain this mission for over 84 years since its incorporation in 1911, and have other particular characteristics that make [it] unique." *Illini Media Co.*, 279 Ill. App. 3d at 437. Significantly, however, only one of the media corporation's three parcels of real estate was entitled to a full tax exemption. The building which housed the media operations was

adjacent to two parcels which were used primarily as car parking lots. *Illini Media Co.*, 279 Ill. App. 3d at 438. Because the media corporation was deemed an exempt corporation, its parking areas would also be exempted.[3] However, each parcel contained a building which the media corporation was not using and intended to eventually demolish to make way for more parking spaces. *Illini Media Co.*, 279 Ill. App. 3d at 438. Because the property owner's future intention of use for an exempt purpose was not the equivalent of using it, the matter was remanded in part for the administrative law judge to determine what portion of the lots was actually in tax exempt usage as parking space. *Illini Media Co.*, 279 Ill. App. 3d at 438.

A foundation which was a financing vehicle for the University of Illinois is another entity whose property was deemed tax exempt because it was closely affiliated with and functioning on behalf of an educational institution. See *People* ex rel. *Goodman v. University of Illinois Foundation*, 388 Ill. 363 (1944).

These four tax-exempt property owners contrast with the Board of Certified Safety Professionals of the Americas, which was not a school itself, did not function on behalf of any

---

[3] Section 19.16 of the Property Tax Code, which has been repealed, exempted "[p]arking areas, not leased or used for profit, when used as a part of a use for which an exemption is provided *** and owned by any *** institution which meets the qualifications for exemption." 35 ILCS 205/19.16 (1992), repealed by Pub. Act 88-455, art. 32, §32-20, eff. January 1, 1994. Property tax exemptions for parking lots used by "any school district, non-profit hospital, school, or religious or charitable institution" are now governed by section 15-125(a) (35 ILCS 200/15-125(a) (West 1998)).

learning institution, and was sponsored by four nonschools: the American Society of Safety Engineers, the American Industrial Hygiene Association, the Systems Safety Society, and the Society of Fire Protection Engineers. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson*, 112 Ill. 2d 542, 544 (1986). It prepared and offered biannual testing for safety professionals, maintained a library of standards and publications pertinent to the safety profession, and regularly published a newsletter. *Board of Certified Safety Professionals*, 112 Ill. 2d at 545. The organization undoubtedly advanced the stature of the safety profession and improved individual competency in safety issues, but it was not acting on behalf of an educational institution. Accordingly, the supreme court rejected the contention the safety organization was similar to the association of medical schools in *Lorenz* and met the requirements for property used for educational purposes. *Board of Certified Safety Professionals*, 112 Ill. 2d at 546.

These cases illustrate the fallacy of Beta House Fund's contention that the test for exemption under section 15-35(c) is strictly use. 35 ILCS 200/15-35(c) (West 1998). They indicate that not just "any not-for-profit entity" (*Illini Media Co*, 279 Ill. App. 3d at 437) can qualify for an educational use exemption under the Property Tax Code. 35 ILCS 200/15-35 (West 1998). Rather, we must look to the particular facts of a case (*Illini Media Co.*, 279 Ill. App. 3d at 437) in order to determine whether the entity is closely associated with and functioning on behalf of a learning institution (*Lorenz*, 17 Ill. 2d at 129; *Big Ten Conference*, 312 Ill. App. 3d at 91; *Illini Media Co.*, 279 Ill. App. 3d at 338), and whether there is actual as opposed to intended use of the property (*Illini Media Co.*, 279 Ill. App. 3d at 338). They indicate

the party seeking exemption from taxation need not show that the use of the real property is absolutely indispensable for carrying out the work of a learning institution; however, the applicant must show the primary use of the property is by an association of learning institutions or some other legal entity that is closely affiliated with and functions on behalf of a learning institution.

We also reject Beta House Fund's contention that the students' use of the fraternity house at 5625 South University Avenue "shares many of the criteria set forth in *Illini Media*" and meets or exceeds the tax-exempt usage depicted in that case. *Illini Media Co.*, 279 Ill. App. 3d 432. In an attempt to establish that the fraternity is "assist[ing] the university's mission," it argues "the University actively pursues links with and supervises the fraternities on campus, including the [Illinois Beta Chapter of Phi Delta Theta], by appointing a University official as a 'Greek Advisor' supervising the Chapter, by organizing an Inter-Fraternity Council, and by organizing the alumni of the fraternities into an alumni coun[cil], the president of which is a Chapter alumnus." The Department of Revenue counters that these circumstances would not be sufficient to garner a tax exemption under the rationale of *Illini Media Company*, even if they were an accurate statement of the record, which they are not. *Illini Media Co.*, 279 Ill. App. 3d 432.

Michael Liberty, president of the local chapter in 2002, testified that he pledged to the fraternity in the spring of 2000 and would be part of the graduating class of 2003. When Liberty testified on June 11, 2002, he stated there is only "[s]ort of [an interfraternity council]. The University is pursuing one, but the fraternities on campus have been reluctant to participate." In other words, there was no interfraternity council during the 2000 tax year at issue, and the

fraternities, far from being controlled by or functioning on behalf of the school, are sufficiently independent that they can resist the University's efforts to organize them.

Furthermore, there was no alumni interfraternity council in the 2000 tax year at issue. According to Liberty, "it was more or less resurrected in the last year [2001-02] to facilitate communication between the different fraternities' alumni so they could pass on knowledge about renovations, that type of thing" and to have "some kind of connection with the university about Greek alumni events," not about the events or activities of the current undergraduate residents of the house.

In addition, although Beta House Fund argues there was a University-appointed "Greek Advisor supervising the Chapter," Liberty testified the president of the alumni interfraternity council happened to be an alumnus of the Illinois Beta Chapter of Phi Delta Theta, "[a]nd so he will meet with the Greek advisor to the undergraduates and discuss different things that are going on."

Thus, the only record evidence of a connection between the Beta House Fund or the fraternity and the University is that a fraternity alumnus met with a Greek Advisor in 2002, not as a representative of the Beta House Fund or fraternity, but in his role as the president of the alumni interfraternity council to discuss "Greek alumni events." This limited contact does not demonstrate that the school exercised any authority over the Beta House Fund or the fraternity, or that the fraternity shared a close affiliation with the school and was functioning on its behalf. Moreover, Liberty testified that being a student of the University was not a requirement to becoming a member of the fraternity. When asked whether fraternity members would "rush

anyone who wasn't already a student at the University of Chicago," Liberty answered "[p]robably not," but explained, "[m]ostly because they are not around on a consistent basis." The record also shows that at least one non-member resided in the house during the tax year at issue. We also note that Beta House Fund's own articles of incorporation and corporate bylaws indicate it is not closely affiliated with the university and functioning on behalf of the learning institution. The corporation purports to "promote and foster the social and fraternal principles of the Phi Delta Theta Fraternity of the University of Chicago, and engage in other pleasure, recreation and nonprofit[] activities." The corporation's "principal object *** is to *** maintain a Chapter House *** for students *** [and] a free library *** along with electronic facilities and access to promote the advancement of sound learning," and its activities include "representing the members of [the fraternity]," "owning, supervising, acquiring and disposing of real estate," and "fostering united action and promoting unbroken concourse of all members of [the fraternity]." In short, the plaintiff's purpose and efforts are on behalf of the fraternal organization and its student and alumni members, not on behalf of the learning institution. Although Beta House Fund considers *Lorenz* and *Big Ten Conference* to be most analogous to its own circumstances, we see no similarities between a fraternity that maintains a residence for the benefit of itself and its individual members and associations which perform administrative functions for the benefit of member colleges and universities. The record does not indicate Beta House Fund or the local chapter of the fraternity is closely associated with and functioning on behalf of a learning institution. *Lorenz*, 17 Ill. 2d at 129; *Big Ten Conference*, 312 Ill. App. 3d at 91; *Illini Media Co.*, 279 Ill. App. 3d at 338. The record does not indicate Beta House Fund or the local chapter

1-07-0624

of the fraternity is relieving the University of Chicago of any of its tasks or otherwise furthering the school's purposes. *Lorenz*, 17 Ill. 2d at 129; *Big Ten Conference*, 312 Ill. App. 3d at 91; *Illini Media Co.*, 279 Ill. App. 3d at 338. In addition, because the record suggests the local chapter has begun hosting educational lectures in order to enhance its claim to an educational use tax exemption, we point out that even if the fraternity house hosted regular lectures, study sessions, or exam preparation classes, such incidental use of the residential property would not be on behalf of the University of Chicago, and would not entitle the fraternity to a property tax exemption under section 15-35(c). 35 ILCS 200/15-35 (West 1998).

We conclude that allowing a tax exemption in this instance would be contrary to the constitutional requirement that the property be used "exclusively for school purposes," and would be inconsistent with the terms of the Property Tax Code. 35 ILCS 200/15-35(b) (West 1998).

For these reasons, we are not left with the definite and firm conviction that the decision of the administrative agency which was affirmed by the circuit court was in error. We affirm.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.