THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LONNIE WARD, Defendant-Appellant.

First District (2nd Division)   No. 1—86—3169

Opinion filed January 30, 1990.

Randolph N. Stone, Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, David Butzen, and Eileen Rubin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Lonnie Ward appeals from his convictions following a trial for armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) and possession of a stolen motor vehicle (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103) and from the imposition of concurrent sentences of eight and seven years' imprisonment, respectively.

In August 1985, defendant and codefendant Rose Richmond were indicted for armed robbery, possession of a stolen motor vehicle, theft and two counts of armed violence. During their joint bench trial on July 30, 1986, the court heard the following evidence.

Daniel Ramos testified that on July 29, 1985, at about 8 p.m., he was on his way to visit a friend at 1800 North Lawndale in Chicago. As Ramos stepped out of his car, a yellow 1976 Cadillac, defendant and Richmond walked up to him and asked him for help with defendant's car. When Ramos went to open his trunk, defendant put a knife to his throat and said, "You move, I'll kill you." He then took over $150 from Ramos' pocket and the keys from his hand.

Continuing to hold the knife at Ramos' throat, defendant ordered him to sit down on the street behind Ramos' car and to remove his

clothing. After Ramos sat down, defendant forced him to take off his shoes and to lie down on his stomach. Defendant then told Richmond to get into the car and, still holding the knife, backed up to the car himself, got inside and drove away.

Ramos testified further that on August 13, 1985, he was in the vicinity of Grand Avenue and Pulaski Road at about 5:30 p.m., when he saw his car parked next to a hot dog stand. Immediately he called the police, but before the police could arrive, defendant and Richmond came out from the hot dog stand. Ramos told them the car was his and that they should not move it because he had just called the police. Without speaking to Ramos, defendant and Richmond got into the car and drove away.

The next day Ramos was again in the vicinity of Grand and Pulaski at about 5 p.m., when he saw his car in the parking lot of a hardware store. Again Ramos called the police, who arrived in five minutes. Soon thereafter defendant walked out of the store, and the police apprehended him. Richmond was apprehended after Ramos recognized her at the police station while he was filling out a report.

Officer Gregory Salvi, one of the two officers who responded to Ramos' call on August 14, 1985, essentially corroborated Ramos' testimony about the events which transpired that day.

Defendant presented the testimony of codefendant Richmond and himself. Richmond claimed that on the day of the alleged robbery she was at her new apartment at 4101 Camerling together with defendant and two other men. She also testified that in July 1985 neither she nor defendant owned a car. Defendant planned to buy one some time after the day of the alleged robbery, however, and Richmond gave him $150 toward its purchase. She claimed that defendant got the new car about August 10, 1985.

Testifying on his own behalf, defendant stated that on the evening of the alleged robbery, at about 6:30 or 7 p.m. he, Richmond and two others arrived at the apartment on Camerling to paint the walls and did not leave until the next day. He also stated that on August 10, 1985, he bought a 1976 Cadillac Eldorado from a stranger named Tyrone Malones, who took $200 and promised to return the next day to hand over the title and to collect the balance of $600. According to defendant, Malones never returned.

Defendant testified next that on August 13, 1985, he remembered hearing a man further away on the street complaining about a car. Because he did not think the man was talking to him, defendant drove away. He could not identify that man as Ramos at trial.

The circuit court found defendant guilty of armed robbery and

possession of a stolen motor vehicle. On September 3, 1986, defendant received concurrent sentences of eight years' and seven years' imprisonment for the two crimes, respectively.

Defendant initially urges this court to reverse his conviction for possession of a stolen motor vehicle, maintaining that the statute, as amended in 1985, is constitutionally infirm.[1] (See Pub. Act 83—1473, eff. Jan. 1, 1985 (amending Ill. Rev. Stat. 1983, ch. 95½, par. 4—103).) Next he argues that the circuit judge abused his discretion when he imposed concurrent sentences of seven and eight years' imprisonment. We will address the constitutional issues first.

I

The relevant provisions of section 4—103 of the Illinois Vehicle Code (Vehicle Code) are as follows:

"§4—103. Offenses relating to motor vehicles and other vehicles—felonies. (a) It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; additionally the General Assembly finds that the acquisition and disposition of vehicles and their essential parts are strictly controlled by law and that such acquisition and disposition are reflected by documents of title, uniform invoices, and bills of sale. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle or an essential part of a stolen or converted vehicle has knowledge that such vehicle or essential part is stolen or converted, regardless of whether the date on which such vehicle or essential part was stolen is recent or remote;

\* \* \*

(b) Sentence. A person convicted of a violation of this Sec-

---

[1]Citing *People v. Lang* (1984), 127 Ill. App. 3d 313, 317, 468 N.E.2d 1303, 1306-07, *aff'd in part & rev'd in part on other grounds* (1986), 113 Ill. 2d 407, 498 N.E.2d 1105, the State responds that defendant may not raise questions concerning the constitutionality of a statute for the first time on review because it is "fundamental" that the trial court must have had the initial opportunity to rule upon such questions. Although the waiver rule has had a confusing history in Illinois law, most recently in *People v. Bryant* (1989), 128 Ill. 2d 448, 453-54, 539 N.E.2d 1221, 1223-24, citing *People v. Frey* (1973), 54 Ill. 2d 28, 29-33, 294 N.E.2d 257, 257-59, the supreme court emphatically held that a party may raise a constitutional challenge to a statute at any time. In *Bryant*, the court addressed a constitutional issue not raised in the circuit court, namely the validity of section 4—103 of the Illinois Vehicle Code, which is also the subject of the instant appeal.

tion shall be guilty of a Class 2 felony." Ill. Rev. Stat. 1985, ch. 95½, par. 4—103.

Defendant advances three arguments against the validity of the statute. First, he maintains the statute is unconstitutional because it punishes possession more severely than theft, a greater included offense of possession. Second, he argues that the enhanced penalty provision of the statute bears no reasonable relation to the legislative goal of preventing automobile theft and chop shop operations. Finally, he contends that the statute is unconstitutionally vague because it embodies conflicting mental states.

## A

After defendant filed the instant appeal, the Illinois Supreme Court handed down its decision in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221, in which it upheld the validity of the current possession of a stolen motor vehicle statute as against the first two arguments advanced by defendant in this case. In *Bryant*, the defendant argued that the statute violated the due process and proportional penalty provisions of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11), because (1) by making possession a Class 2 felony and retaining theft as a Class 3 felony (see Ill. Rev. Stat. 1985, ch. 38, par. 16—1), the legislature sought to punish mere possessors of stolen automobiles more harshly than organized automobile thieves; and (2) the legislature sought to punish the lesser included offense of possession more harshly than the greater offense of theft.

The supreme court found that the plain meaning of the statute clearly indicated an intent to punish all possessors of stolen automobiles, including organized thieves. Thus the appellate court's examination of the legislative debates to determine the legislative purpose motivating the amendment was error. Accordingly, the court held that the statute made no impermissible distinction between classes of violators.

The court also determined that by elevating possession of a stolen motor vehicle from a Class 3 to a Class 2 felony, the legislature removed it from the confines of the theft statute, indicating a legislative desire to make possession a more serious offense than theft. Noting that the legislature has steadily increased the penalty for possession of a stolen motor vehicle from a Class 4 felony in 1977 to a Class 2 felony in 1985, the court stated:

> "We believe that the legislature's decision [to amend the statute] was designed to distinguish possession of a stolen motor vehicle from theft in order to remedy the increasing frequency

of the offense of possession of a stolen motor vehicle and its related activities. Therefore, we hold that section 4—103(b) of the Vehicle Code is reasonably designed to protect the public from the evils of the offense of possession of a stolen motor vehicle and its related activities. As such, section 4—103(b) of the Vehicle Code does not violate sections 2 and 11 of article I of the Illinois Constitution." (*Bryant*, 128 Ill. 2d at 457-58, 539 N.E.2d at 1226.)

Thus, by reason of the enhanced penalty, possession of a stolen motor vehicle is no longer a lesser included offense of theft; accordingly, the proportional penalty analysis is no longer relevant in comparing the two statutes.

## B

■ Second, defendant argues that by striking at simple possession of a stolen automobile, section 4—103 of the Vehicle Code does not bear a reasonable relation to the goal of preventing automobile theft and in particular organized theft operations. According to defendant, a rational connection is missing, because a conviction for possession does not necessarily punish the thief. As the supreme court stated in *Bryant*, however, a court may not look beyond the plain language of a statute if its meaning is unambiguous. (*Bryant*, 128 Ill. 2d at 454-55, 539 N.E.2d at 1224.) Because the language of section 4—103 clearly seeks to punish the crime of possession of a stolen motor vehicle, defendant's concern about the relationship between that goal and other goals which the statute does not articulate is irrelevant. As the foregoing quotation from *Bryant* indicates, section 4—103 of the Vehicle Code is a reasonable legislative response to the evils of the crime of possession of a stolen automobile and its related harms, and therefore passes constitutional muster with respect to defendant's substantive due process argument.

## C

■ What remains is defendant's contention that section 4—103(a) of the Vehicle Code embodies two conflicting mental states and is therefore unconstitutionally vague, an argument which the court in *Bryant* did not address. There is no response to this contention in the State's brief. Defendant points out that the first clause of subsection (a) allows conviction based on actual knowledge by prohibiting "possession of a vehicle *** *knowing* it to have been stolen," whereas the third clause allows conviction based on what defendant dubs "constructive knowledge" by permitting an inference of knowledge from a

person's "exercising exclusive unexplained possession of a stolen vehicle." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a).) It is defendant's position that the reasonable person reading the statute would be confused about whether it imposes merely a subjective or also a higher, objective knowledge standard and would consequently fail to receive fair notice of what conduct the statute prohibits.

Defendant relies primarily on *People v. Monroe* (1987), 118 Ill. 2d 298, 515 N.E.2d 42, in which the supreme court struck down the Drug Paraphernalia Control Act (Act) (Ill. Rev. Stat. 1985, ch. 56½, pars. 2102, 2103) because it contained contradictory mental states. Specifically, the Act required *scienter* in its definition section (Ill. Rev. Stat. 1985, ch. 56½, par. 2102 (" 'Drug Paraphernalia' means all equipment, products and materials of any kind which are *peculiar to and marketed for use in* *** manufacturing *** cannabis or a controlled substance ***"*) (emphasis added)) and constructive knowledge in its penalty section (Ill. Rev. Stat. 1985, ch. 56½, par. 2103 (punishing sale of drug paraphernalia by person who "knows, *or under all of the circumstances reasonably should have known"* that the item is drug paraphernalia) (emphasis added)).

Defendant's reliance on *Monroe* is unwarranted, however, because even a most cursory reading of the recent supreme court case of *People v. Hester* (1989), 131 Ill. 2d 91, 544 N.E.2d 797, makes it readily apparent that what defendant labels a "constructive knowledge" requirement in section 4—103(a) is really an evidentiary presumption. Thus, by contrast to the statute in *Monroe*, section 4—103(a) of the Vehicle Code requires proof of only one mental state—actual knowledge—and thereby obviates the need to consider defendant's vagueness attack altogether.

■ One of the issues in *Hester* was whether a modified version of Illinois Pattern Jury Instructions, Criminal, No. 23.06 (2d ed. 1981) (IPI Criminal 2d No. 23.06), concerning a finding of intoxication, contained a mandatory presumption or a permissive presumption. The court defined a mandatory presumption as one in which the trier of fact is not free to reject the suggested finding. (131 Ill. 2d at 99, 544 N.E.2d at 801.) The strength of the connection between the ultimate fact presumed and the evidentiary fact is subject to the "beyond a reasonable doubt" test. (131 Ill. 2d at 99, 544 N.E.2d at 801.) A permissive presumption, on the other hand, operates as an inference and is one which the trier of fact is free to accept or reject. (131 Ill. 2d at 99, 544 N.E.2d at 801.) Unless the presumption is uncorroborated by other evidence, its validity is subject to a less stringent analysis which

requires only a rational connection between the ultimate fact presumed and the evidentiary fact. 131 Ill. 2d at 100, 544 N.E.2d at 802.

The *Hester* court noted further that certain expressions such as "may presume" and "may infer" are indicative of permissive presumptions. (131 Ill. 2d at 101, 544 N.E.2d at 802.) The instruction at issue in that case stated that if the jurors found defendant's blood-alcohol level to be at least .10%, they *"may presume* that the defendant was under the influence of [alcohol]" and that "this presumption is *not binding."* (Emphasis added.) (131 Ill. 2d at 97, 544 N.E.2d at 800.) The court found that from this language any reasonable juror could conclude that he or she was free to accept or reject the presumption of intoxication, and thus the presumption was permissive. 131 Ill. 2d at 100-01, 544 N.E.2d at 802.

Similarly, in using the phrase "may be inferred," section 4—103(a) of the Vehicle Code creates a permissive presumption, *i.e.,* one which allows the fact finder to draw an inference of knowledge that a vehicle has been stolen from evidence adduced at trial that defendant had exclusive and unexplained possession over the stolen vehicle. Supplying a "rational connection" between knowledge and the inability to explain possession of a stolen automobile, the legislature notes "that the acquisition and disposition of vehicles *** are strictly controlled by law and *** are reflected by documents of title, uniform invoices, and bills of sale." (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a).) By this language, the legislature signifies that the trier of fact may properly infer that someone in possession of a stolen vehicle who cannot produce a document of ownership or reasonably explain its absence knows that the vehicle is stolen.

Since it is clear that what defendant characterizes as an objective mental state requirement is no more than an evidentiary presumption, his due process attack on section 4—103(a) of the Vehicle Code based on vagueness is entirely without merit and must fail along with his other constitutional objections.

## II

Defendant's final argument concerns the reasonableness of his sentence. He claims that in passing the eight-year sentence, the circuit court failed to consider his potential for rehabilitation and generally abused its discretion.

At sentencing, the judge considered the evidence received at trial, the pretrial investigation report, evidence in aggravation and mitigation and defendant's own statement. Thus the judge was aware of factors favoring defendant, such as his age of 23 years, the fact that the

victim of the armed robbery was not injured and defendant's own statement that he is not a violent person. He was also aware of elements favoring the State, such as defendant's two prior convictions for burglary and residential burglary, his current convictions for armed robbery and possession of a stolen motor vehicle, his perjurious testimony and lack of remorse and the circumstances of the two latest crimes. The State specifically drew the judge's attention to defendant's violent use of a knife during the armed robbery and his "audacity" in driving the stolen car around the community in the weeks that followed. Whereas the State recommended a sentence of 12 years, defendant requested between six and eight years. Also, defendant apprised the judge that during a pretrial conference before another judge the State had asked for a sentence of only eight years.

The Unified Code of Corrections provides that the sentence for a Class X felony, including armed robbery, shall not be less than 6 years' and not greater than 30 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3).) It also states that the sentence for a Class 2 felony, including possession of a stolen motor vehicle, shall not be less than three years' and not more than seven years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5).) As we indicated earlier, defendant received a sentence of eight years for the crime of armed robbery and seven years for the crime of possession of a stolen motor vehicle.

Relying on *People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317, and *People v. Crews* (1969), 42 Ill. 2d 60, 244 N.E.2d 593, defendant contends that the trial judge did not adequately take into account his relatively young age and potential for rehabilitation. The State accurately notes the unpersuasive nature of both cited cases. The trial court in *Rickard* imposed a 100- to 300-year sentence on a 32-year-old defendant, and in *Crews* a death sentence on a 34-year-old defendant, both for the crime of murder. The sentences were reversed in view of the overwhelming amount of mitigating circumstances, including defendant's potential for rehabilitation. The *Rickard* opinion recognized that in different circumstances, such as where the defendant has an extensive prior felony record, the rehabilitation factor may not deserve as much weight. (*Rickard*, 99 Ill. App. 3d at 919, 425 N.E.2d at 1320.) In the present case, it would be entirely inappropriate to draw an analogy between the life and death sentences in those cases and defendant's eight-year sentence, which contemplates his release and restoration to useful citizenship at the latest when he reaches the age of 31.

The law is firmly established in Illinois that, absent a clear

abuse of discretion, a reviewing court may not substitute its own sentence merely because it disagrees with the sentence imposed by the trial court. (*People v. Younger* (1986), 112 Ill. 2d 422, 494 N.E.2d 145; *People v. Emery* (1989), 190 Ill. App. 3d 171, 546 N.E.2d 658.) In the present case, the court made a fully informed decision based on a plenary record and its consideration of the aggravating and mitigating factors offered by both sides. Furthermore, the defendant's eight-year sentence was not only within legislative limits and on the very low end of the range permitted for armed robbery, but also coincided with defendant's own maximum request. Accordingly, there was no abuse of discretion, and the sentence should be affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.