No. 2--06--0520          Filed: 1-9-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LOMBARD PUBLIC FACILITIES CORPORATION, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--1505 |
| | ) | |
| THE DEPARTMENT OF REVENUE, | ) | Honorable |
| | ) | Edward R. Duncan, Jr., |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Lombard Public Facilities Corporation (LPFC), appeals the decision of defendant, the Department of Revenue (Department), denying its application for exemption from the Retailers' Occupation Tax Act (Retailers' Tax Act) (35 ILCS 120/1 et seq. (West 2004)), pursuant to the exemption provided in section 2--5(11) of the Retailers' Tax Act.[1] On November 10, 2003, LPFC

[1]Illinois sales tax has two components, the Retailers' Tax Act and the Use Tax Act (35 ILCS 105/1 et seq. (West 2004)). Since the Use Tax Act was adopted to supplement the Retailers' Tax Act, both contain complementary provisions, and construction of one provision is relevant in the construction of its complement. See Granite City Steel Co. v. Department of Revenue, 30 Ill. 2d 552, 558 (1964). Since LPFC addresses only the Retailers' Tax Act, we refer only to that statute but acknowledge that our interpretation is relevant to the complementary provision found in section 3--5(4) of the Use Tax Act.

filed its application for exemption from the Retailers' Tax Act, indicating that its purchases were those of a governmental body, namely, the Village of Lombard. On November 7, 2005, the Department issued its decision denying LPFC's application after an administrative hearing was conducted. LPFC filed a complaint for administrative review in the circuit court, and on May 4, 2006, the circuit court affirmed the decision of the Department. LPFC timely appealed, arguing that (1) this court should review de novo the issue of whether it qualifies for an exemption from the Retailers' Tax Act as a governmental body, and in so doing (2) the court should find that it constitutes a "governmental body" by applying the "realities of ownership" principle discussed in Southern Illinois University Foundation v. Booker, 98 Ill. App. 3d 1062, 1069 (1981). We affirm.

## I. BACKGROUND

On September 4, 2003, in an effort to develop a parcel of land near Yorktown Shopping Center into a hotel and convention hall, the Village of Lombard (Village) passed Ordinance Number 5351. Lombard, Ill., Ordinance No. 5351 (eff. September 4, 2003). That ordinance approved the incorporation of LPFC to assist the Village in securing financing for the construction of the convention hall and hotel facility. The formation of LPFC was necessary because the cost of the project exceeded the Village's statutory bonding limitations. The ordinance specified that the purpose of LPFC, a not-for-profit corporation, was to "assist in the financing and construction of a convention hall and hotel facility" in the Village. The ordinance further stated that upon redemption of the bonds issued for the project, LPFC would transfer title of the property to the Village free of any encumbrances. LPFC was granted authority to issue, sell, and deliver its bonds, encumber any real property or equipment acquired by it for the purpose of financing the project, and enter into contracts

for the sale of bonds and the construction and acquisition of the convention hall and hotel facility. The ordinance named five individuals as directors of LPFC.

The articles of incorporation for LPFC provided the following. They listed Leonard J. Flood as the registered agent, with the Village's address as the corporation's address. The purpose of LPFC was "to assist the Village of Lombard in its essential governmental purposes." Articles IV and V allowed the Village to remove any director or officer with or without cause by the majority vote of the president and board of trustees of the Village. The Village appointed the initial directors and retained the right to fill any vacancies. Per article VII, no amendments were allowed to be made to article IV without the approval of the Village. Further, section 4.8 and section 6.3 of the articles made the Open Meetings Act (5 ILCS 120/1 et seq. (West 2004)), the State Gift Ban Act (5 ILCS 425/1 et seq. (West 2004)), and the conflict of interest statute (50 ILCS 105/3 (West 2004)) applicable to LPFC. Article X provided that LPFC "shall not sell, transfer or otherwise convey title to the Hotel and Convention Facility to a third party without the prior consent" of the Village in the form of a resolution adopted by the Village and filed with LPFC. If the Village were to consent to the sale of the property to third persons, title would first transfer from LPFC to the Village.

The Village and LPFC entered into an agreement entitled the "Tax Rebate Agreement" dated April 1, 2005. In that agreement, LPFC agreed to obtain a surety bond in the amount of $1.1 million, enter into a master development agreement with Harp Lombard, LLC, submit construction plans to the Village for approval, and oversee the construction of the project in accordance with Village Ordinance Nos. 5396 and 5397. LPFC was to enter into agreements with suitable third parties, such as construction companies and consultants, in order to complete the project. Pursuant to the agreement, the Village agreed to provide funds to make debt service payments on the bonds only if

income from the project was insufficient. However, the agreement contained a $2 million cap on what the Village would pay on bond debt for the senior bonds. Further, the Village's taxing power and full faith and credit would not be pledged as security for any of the bonds. On September 29, 2005, construction of the convention hall and hotel facility commenced after LPFC issued bonds in the amount of $183,710,000 and acquired title to the property.

On November 10, 2003, LPFC filed its application for exemption from the Retailers' Tax Act on the principle that its purchases made for the construction and furnishing of the hotel and convention center project were those of a governmental body (the Village). On March 5, 2004, the Department denied LPFC's request for a sales tax exemption number, concluding that LPFC was not a governmental body within the meaning of section 2--5(11) of the Retailers' Tax Act. LPFC filed a complaint for administrative review in the circuit court on April 8, 2004, but it was dismissed because LPFC did not exhaust all administrative remedies, including requesting a hearing. LPFC then requested an administrative hearing.

On July 28, 2005, a hearing was held before an administrative law judge (ALJ). At the hearing, counsel for the Department admitted that the issue of whether an organization like LPFC qualified for a tax exemption as a "governmental body" was one that was rarely confronted. The Department argued that LPFC did not present any evidence that a governmental body owned the convention center and hotel property or that LPFC was a governmental body itself. LPFC argued that if the Department applied the "realities of ownership" test as the court in Southern Illinois did, it would find that LPFC was a governmental body under the Retailers' Tax Act. We examine Southern Illinois in the analysis section of this opinion.

At the outset of the hearing, LPFC's articles of incorporation and bylaws, a copy of Village Ordinance No. 5351, and the Tax Rebate Agreement were all entered into evidence. Next, Leonard Flood, director of finance and treasurer for the Village, testified on behalf of LPFC. Flood was involved with the convention center and hotel facility project from its beginning. The total cost of the project was estimated at $192 million. LPFC would be issuing $182 million in tax-exempt revenue bonds to cover the cost of the project, because of the Village's bonding limitations. Pursuant to section 8--5--1 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/8--5--1 (West 2004)), the Village could not become indebted for an amount greater than 8.625% of the value of taxable property therein, which would allow the Village approximately $106 million available to issue in bonds. That amount was wholly insufficient for the convention center project in light of its total anticipated costs and the Village's other expenses and needs. Flood identified a copy of Ordinance No. 5351 and explained that the ordinance provided for the creation of LPFC for the purpose of financing, constructing, and equipping the proposed development. Other municipalities in the nation have used such corporations in order to finance large projects, and the Village determined that this would be a suitable option for the convention center project. Flood further acknowledged that LPFC's articles of incorporation provided that: (1) the Village would appoint LPFC's directors and retain the authority to remove any officer at any time; (2) the Village must approve any change to LPFC's bylaws; (3) per the Tax Rebate Agreement, the Village pledged to rebate to LPFC all of the sales tax revenue generated from the project and place it into the project revenue stream to assist in the retirement of the debt; (4) the Village will take title of the property free and clear of any encumbrances upon the retirement of the bonds; and (5) LPFC has no authority to sell the property without consent of the Village. Flood further explained that under the terms of the Tax Rebate

Agreement, the Village had the ultimate risk because if there were a shortfall in the revenue from the project, the Village would be responsible for providing a backstop guaranty to pay the debt service expense once all available reserves had been exhausted. Under the agreement, in any given year, the Village could be required to pay up to $2 million to cover debt service expense. If revenue were insufficient, LPFC had no resources itself to utilize. LPFC was staffed by Village employees, and meetings were held at the Village in accord with the Open Meetings Act.

On cross-examination, Flood admitted that LPFC did not have the ability to impose taxes, maintain a police force, or provide water or sewage treatment, and had not received any charter from the State of Illinois recognizing it as a governmental body. On redirect, he acknowledged that the bylaws included a requirement that LPFC abide by the terms of the Open Meetings Act, even though by law that act did not apply to corporations.

On November 4, 2005, the ALJ issued his decision in the matter, which was approved by the Department on November 7, 2005. In the decision, the Department made the following findings of fact. LPFC was a not-for-profit corporation incorporated solely by Flood after the Village passed Ordinance No. 5351. The Village appointed its five initial directors and retained the right to remove any director and fill any vacancy. LPFC contracted under its own name and took title to property, though upon redemption of the bonds, title would pass to the Village. Any amendment to article IV of LPFC's bylaws had to be approved by the Village.

The Department made the following conclusions of law. Section 7 of the Retailers' Tax Act provides that the burden is on the taxpayer to show that he is entitled to an exemption. 35 ILCS 120/7 (West 2004). The Department's initial March 5, 2004, denial letter established its prima facie case that LPFC did not qualify for the exemption, and thus the burden shifted to LPFC to present

evidence that the Department's determinations were not correct. Copilevitz v. Department of Revenue, 41 Ill. 2d 154, 157-58 (1968). The text of the March 5, 2004, denial letter indicated that LPFC may have originally applied for a tax exemption as a charitable organization. However, LPFC made it clear in the hearing and its brief to the ALJ that it was asserting it was a governmental body. Because LPFC abandoned any argument that it was entitled to the tax exemption as an exclusively charitable organization, the Department did not analyze that issue and discussed solely whether LPFC qualified as a governmental body.

First, the Department decided that Southern Illinois was not applicable to this case, because the court's holding was limited to the facts of that case where there were stipulated facts and the issue related to the ownership of real property. It went on to explain that if the legislature intended to include any nonprofit organization acting as an agent or instrumentality of a governmental body, then the statute must be read to give effect to that intent. However, in taxation cases, a statute must be strictly construed in favor of taxation and against exemption. Wyndemere Retirement Community v. Department of Revenue, 274 Ill. App. 3d 455, 459 (1995). The Department then went on to apply traditional rules of statutory construction, determining that if the legislature had intended to include agents or instrumentalities of the government in the Retailers' Tax Act, it would have expressly done so. The Department compared this case to Carroll v. Paddock, 199 Ill. 2d 16, 28 (2002), where the court decided that not-for-profit charitable hospitals and not-for-profit mental health care organizations were not "local public entities" within the meaning of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1--101.1 (West 2000)). Likewise, the Department found that the term "governmental body" in the Retailers' Tax Act was not intended to cover nonprofit corporations that were acting as agencies or instrumentalities of

the government. LPFC now appeals that decision, arguing that LPFC qualifies for the governmental-body exemption when the Southern Illinois factors are applied to the facts present here.

## II. ANALYSIS

First, the parties do not agree on the applicable standard of review. LPFC argues that we should review de novo the issue of whether it qualified for the exemption as a governmental body, because the facts are undisputed. The Department argues that the issue of whether LPFC qualifies for the governmental-body exemption is a mixed question of law and fact, so the standard of review is clearly-erroneous. Both parties are partially correct.

This court reviews the decision of the administrative agency, not the decision of the trial court. Dow Chemical Co. v. Department of Revenue, 359 Ill. App. 3d 1, 20 (2005). "The standard of review applicable to an [administrative] agency's decision depends on whether the question presented on appeal is one of fact, of law, or of both." Du Page County Airport Authority v. Department of Revenue, 358 Ill. App. 3d 476, 482 (2005). Our review of an agency's factual findings is limited to determining whether such findings are against the manifest weight of the evidence, and we do not weigh the evidence or substitute our judgment in place of the agency. Du Page County Airport, 358 Ill. App. 3d at 482. Agency rulings on questions of law do not receive such deference on review, but rather are reviewed de novo. Du Page County Airport, 358 Ill. App. 3d at 482. When the issue presented contains mixed questions of law and fact, the standard of review is whether the decision was clearly erroneous. Dow, 359 Ill. App. 3d at 20. The clearly-erroneous standard applies to administrative cases involving mixed questions of law and fact, rather than a bifurcated standard, in part because of the deference given to the agency's experience and expertise in interpreting its statutes. Home Depot, U.S.A., Inc. v. Department of Revenue, 355 Ill. App. 3d 370, 374 (2005).

A mixed question of law and fact is whether the facts satisfy a statutory standard or whether the rule of law, as applied to the established facts, is violated. Dow, 359 Ill. App. 3d at 22. The clearly-erroneous standard of review lies somewhere between a de novo and a manifest-weight-of-the-evidence standard, but provides some deference to the agency's experience and expertise. Dow, 359 Ill. App. 3d at 22. While the agency is awarded deference, a reviewing court will reverse the agency decision when there is evidence supporting reversal and the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 393 (2001), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

In this case, the parties do not dispute any facts, and thus there is no question of fact presented for our review. The interpretation of the definition of "governmental body" under section 2--5(11) of the Retailers' Tax Act is a question of law, to which de novo review applies. See Du Page County Airport, 358 Ill. App. 3d at 483 (applying de novo review to statutory interpretation question). Finally, we review the Department's ultimate conclusion (its application of section 2--5(11) to the facts of this case), that LPFC did not qualify for an exemption from the Retailers' Tax Act as a governmental body, using the clearly-erroneous standard of review. See Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 144 (2006) (applying de novo standard of review for statutory interpretation question and clearly-erroneous standard to the school board's ultimate decision); Honeywell International, Inc. v. Department of Revenue, 366 Ill. App. 3d 187, 192 (2006) (applying clearly-erroneous standard of review where facts were undisputed but application of statute to facts was in dispute).

Before we can decide whether the Department's decision to deny LPFC's exemption request was erroneous, we must first examine the meaning of "governmental body" in section 2--5(11). LPFC argues that while it is not a governmental body, the Department should have found it eligible for the exemption because it was essentially acting as an agent or instrumentality of the Village. The Department argues that because LPFC purchases and holds title to all property, LPFC does not qualify for the governmental-body exemption.

Section 2--5(11) of the Retailers' Tax Act provides exemptions for:

"Personal property sold to a <u>governmental body</u>, to a corporation, society, association, foundation, or institution organized and operated exclusively for charitable, religious, or educational purposes, or to a not-for-profit corporation, society, association, foundation, institution, or organization that has no compensated officers or employees and that is organized and operated primarily for the recreation of persons 55 years of age or older. A limited liability company may qualify for the exemption under this paragraph only if the limited liability company is organized and operated exclusively for educational purposes. On and after July 1, 1987, however, no entity otherwise eligible for this exemption shall make tax-free purchases unless it has an active identification number issued by the Department." (Emphasis added.) 35 ILCS 120/2--5(11) (West 2004).

The Retailers' Tax Act does not define "governmental body" but defines "purchaser" as follows:

" 'Purchaser' means anyone who, through a sale at retail, acquires the ownership of or title to tangible personal property for valuable consideration." 35 ILCS 120/1 (West 2004).

The parties do not cite and we do not find a case analyzing the term "governmental body" in the Retailers' Tax Act, and the statute itself does not define the term. We, therefore, apply traditional rules of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees of St. Clair County, 218 Ill. 2d 175, 186 (2006). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning, and considering the statute in its entirety. Collinsville, 218 Ill. 2d at 186. Where the meaning of a statute is unclear, courts may look beyond the language of the statute and consider the purpose of the law, the evil it was intended to remedy, and the legislative history of the statute. Stroger v. Regional Transportation Authority, 201 Ill. 2d 508, 524 (2002). Following these rules, we look to the term "governmental body," using its plain and ordinary meaning, and find the term to be unambiguous. The statute clearly applies only to governmental bodies, and not agents or instrumentalities thereof. We need not further analyze whether LPFC is a governmental body, because it admits it is not in its appellant's brief.

The special concurrence believes that our analysis should end at our conclusion that section 2--5(11) does not encompass agents or instrumentalities of governmental bodies. However, this ends only the first step of our review, which was to interpret section 2--5(11) de novo. The parties and the ALJ addressed, at great length, whether the reasoning set forth in Southern Illinois was applicable to LPFC such that it was eligible for the exemption as an agent or instrumentality of the Village even though the statute does not express that agents or instrumentalities of governmental bodies are exempt. We find that it is appropriate to address the parties' central arguments as litigated to this court, to the trial court, and at the administrative level as litigants look to our opinions for guidance. See City of Chicago v. Pooh Bah Enterprises, Inc., 224 Ill. 2d 390, 454 (2007) (Freeman, J.,

dissenting upon denial of reh'g) (commenting on inappropriateness of court's failure to address central arguments raised by the parties and court's failure to provide litigants with guidance for future cases in its opinion that dismissed a central issue without analysis of the parties' arguments). Accordingly, as the Department's decision applying the law to the facts of this case involves a mixed question of law and fact, we review its decision for clear error.

We disagree with LPFC that Southern Illinois is applicable to the facts here. In Southern Illinois, the University transferred title of a residential housing property to a nonprofit corporation that it created, the Southern Illinois University Foundation, which leased the property back to the University. Southern Illinois, 98 Ill. App. 3d at 1063-65. The University created the Foundation to hold title in order to obtain long-term financing for the construction of a residence hall, because statutory debt restrictions prevented the University from obtaining the loans in its name. Southern Illinois, 98 Ill. App. 3d at 1067. The Foundation then sought a property tax exemption afforded to property owned by the State of Illinois. Southern Illinois, 98 Ill. App. 3d at 1063-64. In order to determine whether the property was "owned" by the State of Illinois (i.e. the University) pursuant to section 19.5 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 500.5), the court analyzed what type of ownership was required by the statute and the relationship of the University and the Foundation. Southern Illinois, 98 Ill. App. 3d at 1064.

The appellate court held that the University possessed equitable ownership of the residence hall property because the University's board of directors controlled the management of the Foundation, the University president was among the Foundation's 11 board members, and the chairman of the University's board was authorized to designate two board members. Southern Illinois, 98 Ill. App. 3d at 1065, 1069. Further, the control and operation of the property was under

the jurisdiction of the University, and the property was managed by the University's housing office in the same manner as all other student housing facilities. Southern Illinois, 98 Ill. App. 3d at 1066. The University also used its own funds to pay "rent" to the Foundation by paying the Foundation's federal mortgage as the Foundation's agent. Southern Illinois, 98 Ill. App. 3d at 1066. Upon retirement of the mortgage obtained by the Foundation, the title of the property was to transfer to the University. Southern Illinois, 98 Ill. App. 3d at 1066.

As to the question of whether equitable ownership was sufficient to satisfy the exemption statute, the county argued that "ownership" for tax purposes required "actual, legal ownership" and, therefore, because the Foundation held actual title to the property, the University did not qualify for the property tax exemption. Southern Illinois, 98 Ill. App. 3d at 1067. The University argued that it held equitable ownership in the property and that this was sufficient to qualify for the exemption. Southern Illinois, 98 Ill. App. 3d at 1067. The court stated that revenue collection was concerned "not with the refinements of title but with the realities of ownership." Southern Illinois, 98 Ill. App. 3d at 1069, citing People v. Chicago Title & Trust Co., 75 Ill. 2d 479, 489 (1979) (stating title to property refers to a legal relationship with land, while ownership is denoted by control and the right to enjoy the benefits of the property). However, the language of section 19.5 did not specify that legal ownership was required, as the language exempted " '[a]ll property of every kind belonging to the State of Illinois,' " and therefore equitable ownership was sufficient to qualify for the exemption. Southern Illinois, 98 Ill. App. 3d at 1070.

While there are certainly some factual similarities between Southern Illinois and this case, we find the determinative facts in Southern Illinois distinguishable from the facts here. First and foremost, the statutes involved in this case do not concern legal and equitable ownership of property.

Section 2--5(11) unambiguously applies only to governmental bodies (and other entities not at issue in this case) and clearly not to agents or instrumentalities of governmental bodies. Further, section 1 defines a purchaser as "anyone who, through a sale at retail, acquires the ownership of or title to tangible personal property for a valuable consideration." 35 ILCS 120/1 (West 2004). LPFC purchased items with funds obtained through the issuance of its bonds; thus, the Village provided no valuable consideration for the property. Whether the Village was able to use and enjoy the property as the University did in Southern Illinois is irrelevant because the Village did not provide valuable consideration for any purchase related to the convention center. However, even if the Village provided consideration, there is no evidence that the Village has possession, control, and use of the personal property while LPFC holds title. Unlike the University in Southern Illinois, the Village never had title to the convention center property, and the property was never leased to the Village. In Southern Illinois, the parties, unlike the parties here, stipulated to a number of facts, including that the University at all times controlled, operated, and used the residence hall as its own and used its own funds to pay the Foundation's federal mortgage. Southern Illinois, 98 Ill. App. 3d at 1066. Here, while the Village maintained control over building plans, it did not maintain daily control over the property, and the Village did not funnel any of its own funds to LPFC. Rather, all funds used by LPFC for this project were obtained through issuance of LPFC's bonds. Further, the Village itself had limited financial exposure in the project because tax income used towards paying off the bonds was received from LPFC pursuant to the Tax Rebate Agreement.

LPFC makes several other arguments for its position, and those arguments also fail for various reasons. LPFC argues that the Village is the ultimate beneficiary of the project because the Village and its residents will enjoy the tax revenues and employment opportunities that the project creates.

However, the same is true for private development, and private developers would not qualify for tax exemptions for governmental bodies under this logic. Next, LPFC cites to Internal Revenue Service (IRS) Rule 63--20 for a test used to determine whether interest income received on bonds issued by a nonprofit corporation constituted interest received on governmental obligations. LPFC admits that the IRS test is not binding on this court but is merely persuasive authority. However, we find this case's sales tax exemption issue distinguishable from the IRS's interest income tax issue and that the IRS's test is inapplicable, even for guidance, to the case at bar. Eden Retirement Center, Inc. v. Department of Revenue, 213 Ill. 2d 273, 290-91 (2004) (federal tax-exempt status is not dispositive of Illinois tax exemption issues).

LPFC's argument that it is an agent of the Village also fails under basic agency-law principles because the principal is the only source of an agent's authority. See Merchants' National Bank of Peoria v. Nichols & Shepherd Co., 223 Ill. 41, 49 (1906); 3 Am. Jur. 2d Agency §68 (2007). While the special concurrence points out that exceptions to this traditional agency rule may exist, we do not agree that any such exception would apply to a non-home-rule municipality. Non-home-rule municipalities must derive their authority to act from the legislature (Village of Orland Hills v. Citizens Utilities Co. of Illinois, 347 Ill. App. 3d 504, 519 (2004)), and thus they "possess only those powers expressly granted, powers incident to those expressly granted, and powers indispensable to accomplish the municipalit[ies'] purposes" (Thompson v. Village of Newark, 329 Ill. App. 3d 536, 539 (2002)). Here, section 8--5--1 of the Municipal Code expressly prohibited the Village from issuing bonds in the amount necessary for the convention center; therefore, to allow the Village to expressly allow LPFC to do so or later ratify an act of LPFC on its behalf would contradict the legislature's clear intent that non-home-rule municipalities limit their indebtedness. We find this logic,

using the special concurrence's terminology of choice, "perfectly intuitive." This is not to say that the Village was legally prohibited from creating LPFC to facilitate the financing of the convention center project, as that issue was not raised; rather, we simply note that LPFC could not be considered an agent of the Village.

Finally, in its reply brief, LPFC raised the argument that the power to appoint corporate directors constitutes equitable ownership of that corporation's property. In a motion taken with the case, the Department moved to strike this argument pursuant to Supreme Court Rule 341(j) (210 Ill. 2d R. 341(j)), because LPFC did not make this argument in its initial brief, and in the alternative requested permission to file a surreply brief to respond to the argument. We grant the Department's motion to file a surreply brief, and we agree with the Department's argument that a corporation that observes the formalities of creating a separate existence may not disregard such distinction in order to avoid sales tax burdens. Superior Coal Co. v. Department of Finance, 377 Ill. 282 (1941) (finding that a corporation and its stockholders, even if other corporations, are deemed separate entities with respect to tax issues and courts will ignore the fiction of corporate entity only when it is used to perpetrate fraud or deceive the public). The supreme court in Superior Coal specifically stated that "where corporations meticulously observe the formalities incident to separate corporate existence and receive substantial economic benefits therefrom, they will not be permitted to disregard *** the maintenance of separate corporate identities." Superior Coal, 377 Ill. at 290; see also Main Bank of Chicago v. Baker, 86 Ill. 2d 188, 205 (1981) (explaining that a corporation is separate and distinct from its shareholders, directors, and officers, and generally from other corporations with which it is affiliated, and that neither stock ownership alone nor the use of common officers and directors in one corporation by another creates an identity of interest between the two or creates the relation of

principal and agent). Here, the Village created LPFC as a separate and distinct entity in order to benefit from its financing capabilities. Therefore, the Village cannot now avoid its existence as a separate entity to avoid sales tax burdens.

In reviewing the Department's ultimate decision to deny exemption status to LPFC, we find its arguments persuasive. The Department argues that LPFC's status as the actual purchaser must be considered apart from that of the Village, relying on Berwyn Lumber Co. v. Korshak, 34 Ill. 2d 320, 322-23 (1966), and Yale Club of Chicago v. Department of Revenue, 214 Ill. App. 3d 468, 476 (1991), and we agree. In Berwyn Lumber, the independent contractor plaintiffs sought an exemption from the Retailers' Tax Act for building-material purchases that they made pursuant to a construction contract they had with the government. Berwyn Lumber, 34 Ill. 2d at 321. The contractors argued that the materials purchased were used or consumed by exempt organizations, which used the contractors as their agents; however, there was no basis for an agency-relationship argument in the record. Berwyn Lumber, 34 Ill. 2d at 322. The contractors argued that by not allowing them the exemption, the government was incurring higher costs, but the court also rejected that argument. Berwyn Lumber, 34 Ill. 2d at 323. The court held that the exclusion was intended for the purchaser and not for "someone else farther down the line of economic intercourse with whom he in turn might deal," and it was undisputed that the sales in question were sales to independent contractors, not to the governmental bodies that were parties to the construction contracts. Berwyn Lumber, 34 Ill. 2d at 323. As in Berwyn Lumber, the parties do not dispute that LPFC is not a governmental body and that it, and not the Village, was the actual purchaser and titleholder of the personal property. As the court in Berwyn Lumber explained, the exemption applies to the actual purchaser and not to a future beneficiary of the purchases. In this case, the future benefits are even more remote than in Berwyn

Lumber because the Village acquires title to the property in question only when the bonds are redeemed, and the redemption of the bonds depends on the success of the convention center, among other uncontrollable factors. Hence, the future benefit is merely a future expectancy, whereas in Berwyn Lumber the government would presumably have benefitted from the purchases of the construction equipment as soon as the equipment was used at its sites.

Likewise, in Yale Club, a nonprofit organization incorporated to promote Yale University by recruiting Chicago-area students, raising funds for scholarships, and promoting and organizing alumni events sought a sales tax exemption for educational or charitable organizations. Yale Club, 214 Ill. App. 3d at 470-71. The main purpose of the Yale Club was to interview prospective students in the Chicago area, but it did not make any admissions decisions, as those remained in the sole control of Yale University. Yale Club, 214 Ill. App. 3d at 471. The court held that the Yale Club did not qualify for the educational tax exemption, because its status had to be considered apart from that of Yale University, the organization its existence benefitted. Yale Club, 214 Ill. App. 3d at 476. The court considered that the Yale Club was not a recognized part of Yale University, its members were not a part of Yale University's staff, and it did not have any control in Yale University's admission decisions. Yale Club, 214 Ill. App. 3d at 476. Moreover, there was no evidence that Yale University's recruiting and fundraising needs would not have been met without the efforts of the Yale Club. Yale Club, 214 Ill. App. 3d at 476-77. The court also rejected the Yale Club's argument that it qualified for the charitable tax exemption because the club was not designed to benefit an indefinite number of persons or all those in need who applied, as the definition required. Yale Club, 214 Ill. App. 3d at 478.

Again, the court in Yale Club considered the status of the entity seeking the exemption separate from the organization it benefitted. Here, we also must consider LPFC's status separate and apart from the Village, and in doing so we reach the same conclusion as the court in Yale Club. Like the Yale Club, LPFC: (1) had little or no control over the Village and its decisions; (2) was not organized as an agency or branch of the Village itself; and (3) did not perform a function necessary to maintain the Village's existence. While Village employees were appointed to LPFC's board, corporate meetings were conducted separate from Village meetings, and the board had to seek Village approval only for limited activities, such as approval for building plans or the early sale of the property. Overall, the Village was not dependent upon LPFC for its governmental activities, and LPFC was also not dependent on the Village for its day-to-day project management activities.

The Department's conclusions that LPFC did not qualify for exemption status and that Southern Illinois's rationale was inapplicable to the facts of this case were not clearly erroneous, especially given the guidance of Berwyn Lumber and Yale Club. The Department's decision is consistent with guidelines regarding construction of tax exemption statutes. Statutes that exempt property or an entity from taxation must be strictly construed in favor of taxation and against exemption. Wyndemere, 274 Ill. App. 3d at 459. The party requesting the exemption must prove its entitlement clearly and conclusively. Wyndemere, 274 Ill. App. 3d at 459. Courts may not create or extend exemptions from taxation by judicial interpretation of a statute. See Rogy's New Generation, Inc. v. Department of Revenue, 318 Ill. App. 3d 765, 771 (2000); Follett's Illinois Book & Supply Store, Inc. v. Isaacs, 27 Ill. 2d 600, 606 (1963). In analyzing an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. Wyndemere, 274 Ill. App. 3d at 459. The burden to prove entitlement to the governmental body exemption was on LPFC, and

it did not clearly establish that section 2--5(11) of the Retailers' Tax Act applies to a corporate entity created by a governmental body. Therefore, under these facts and traditional rules of tax exemption construction, we find that the Department's decision to deny LPFC exemption status was not clearly erroneous.

### III. CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

ZENOFF, J., concurs.

JUSTICE O'MALLEY, specially concurring:

I agree with the majority that LPFC's claim to a tax exemption as an agent or instrumentality of the Village founders on the plain text of section 2--5(11) of the Retailers' Tax Act. What I question is the necessity, and even the propriety, of the nearly eight pages of analysis that follow the majority's statutory construction, which I consider dispositive of the exemption issue. I also doubt the soundness of a crucial segment of the majority's surplus analysis.

In construing section 2--5(11), the majority employs the dictum that "[w]here the meaning of a statute is unclear, courts may look beyond the language of the statute." Slip op. at 11. The majority finds the relevant language of section 2--5(11) "unambiguous" and concludes that the statute "clearly applies only to government bodies, and not agents or instrumentalities thereof." Slip op. at 10. The majority proceeds, however, to address whether LPFC "was eligible for the exemption as an agent or instrumentality of the Village even though the statute does not express that agents or instrumentalities of governmental bodies are exempt." (Emphasis added.) Slip op. at 11. I am

-20-

unsure why the majority chooses to address this question. If, as is undisputed here, section 2--5(11) is the only possible authority for the exemption, and, as the majority rightly concludes, the unambiguous thrust of the text forecloses an exemption on these facts, then further discussion is needless. In fact, the majority's protraction appears to clash with norms of statutory construction. The converse of the maxim that "[w]here the meaning of a statute is unclear, courts may look beyond the language of the statute" (slip op. at 11) is: "a court may not look beyond the plain language of a statute if its meaning is unambiguous" (emphasis added) (People v. Ward, 194 Ill. App. 3d 229, 234 (1990)), lest it "create exceptions or limitations which are not contained in the statute" (Darwish v. Nationwide Mutual Insurance Co., 246 Ill. App. 3d 903, 907 (1993)). Although the majority did not ultimately create an exception or limitation to the plain language of the statute, its extratextual analysis was expressly undertaken to determine whether it would make such an amendment.

That analysis involves a discussion of several cases, but the only one that has relevance to the interpretation of section 2--5(11), and the only one that warrants anything beyond a mention by the majority, is Berwyn Lumber. There, the supreme court construed a prior version of section 2--5, which exempted "sales to any governmental body or any agency or instrumentality thereof" (emphasis added) (Ill. Rev. Stat. 1963, ch. 120, par. 441). The court refused to broaden the exemption beyond its plain language and so rejected a lumberyard's claim that it was entitled to an exemption for sales to entities that the court determined were not agents or instrumentalities of a governmental body. Berwyn Lumber, 34 Ill. 2d at 323. Berwyn Lumber supports the majority's strict construction of the "governmental body" exemption in its current state.[2] The majority should have incorporated its

---

[2]Of course, if extrinsic aids were appropriate here, the most indicative would be the history of section 2--5. The words "or any agency or instrumentality thereof" were deleted in 1965 (1965

discussion of Berwyn Lumber into the statutory analysis rather than place it in the later regions of the opinion where its relevance is not fully appreciated.

The majority defends its excess analysis by asserting that its construction of section 2--5(11) was but "the first step" of its review. Slip op. at 11. The next step, claims the majority, is to determine "whether the reasoning set forth in Southern Illinois [is] applicable to LPFC such that it was eligible for the exemption as an agent or instrumentality of the Village even though the statute does not express that agents or instrumentalities of governmental bodies are exempt." Slip op. at 11. I disagree. The only legitimate step left was to determine whether LFPC was a governmental body proper--and that was easily decided, since LFPC conceded the issue. The majority's second step effectively defeats the conclusions of the first step. If it is a legitimate question for the majority whether LPFC was an agent or instrumentality of the Village, then the majority must consider its reliance on the plain text of the statute inconclusive, for otherwise it would find the question of agency clearly mooted. I do not understand why the majority draws what appears to be a definitive conclusion only to impliedly disregard it almost immediately.

Southern Illinois is simply inapplicable here and does not warrant the considerable attention the majority devotes to it. In discussing the case, the majority observes that section 1 of the Retailers' Tax Act, which defines "purchaser" as one who acquires property "for valuable consideration," does not recognize the concept of equitable ownership that the court in Southern Illinois found implied in the property tax statute. The majority reasons that, because the Village provided no "valuable consideration" for the personal property sold here, it cannot be considered the "purchaser." The

---

Ill. Laws 136) and have not appeared since. The amendment makes plain the intent of the legislature to now limit the exemption to governmental bodies proper.

significance of this conclusion for the exemption issue is not apparent, for the majority never places "purchaser" in context, leaving unexplained how the term operates in the Retailers' Tax Act to determine exemptions. The majority protracts and complicates what ought to have been a straightforward application of section 2--5(11), the controlling provision here.

The majority, interestingly, cites the dissent from the denial of rehearing in Pooh Bah Enterprises to justify its forging ahead to address Southern Illinois and the agency question. Aside from the fact that a dissent "has no precedential value" (People v. Williams, 368 Ill. App. 3d 616, 621 (2006)), the intracourt dispute in Pooh Bah scarcely resembles my differences with the majority here. In Pooh Bah, bar owners argued that a Chicago ordinance banning the sale of alcohol in establishments that feature nude dancing violated the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV). The majority declined to apply the standard of strict scrutiny to the ordinance, opting instead for intermediate scrutiny. Pooh Bah, 224 Ill. 2d at 415 n.12. The dissent accused the majority of ignoring the authorities that the bar owners cited for strict scrutiny review. The dissent said:

> "The opinion of this court overlooks both of [the] recent United States Supreme Court free speech cases on which the defendants strongly rely for their strict scrutiny argument. Rather than directly address a central argument debated at length by the parties in this case and engage in a thorough analysis of these contentions, the court simply relegates this important debate to a brief footnote in the opinion. ***
>
> * * *
>
> I am deeply troubled by the court's out-of-hand dismissal of Pooh Bah's strict scrutiny argument for several additional reasons. *** [S]uch conduct on the part of this court denies

the parties to this action the reassurance that we have carefully considered and deliberated their arguments. What message does this court send to litigants when it does not even bother to address the central arguments raised in their appeals, especially when they are issues of constitutional magnitude? I venture to say that it creates the perception that this court has predetermined the outcome of the appeal and does not deem it necessary to bother with arguments that may cut in the opposite direction. In addition, by failing to address and fully analyze an issue such as whether strict scrutiny applies to the ordinance challenged in this case, this court fails to provide the bench and bar with the guidance needed to deal with similar issues in future cases." (Emphasis added.) Pooh Bah, 224 Ill. 2d at 452-54 (Freeman, J., dissenting upon denial of reh'g).

The majority believes it is doing the service that the majority in Pooh Bah shirked. Lifting language from the Pooh Bah dissent, the majority claims that "it is appropriate to address the parties' central arguments as litigated to this court" and that its discussion will provide "guidance" to those "at the administrative level" (slip op. at 11). However contorted, the dissent's accusations in Pooh Bah will not fit here. The issue of whether strict scrutiny applied was "central" in Pooh Bah because it was a threshold question for reviewing the Chicago ordinance under the first amendment. The supreme court disposed of the issue, not by rendering it logically immaterial in light of a separate holding (e.g., deciding that the first amendment did not apply at all), but by finding that a different standard, intermediate scrutiny, applied. Here, the majority's holding that the plain language of section 2--15(11) excludes a tax exemption for agents or instrumentalities of governmental bodies extinguishes the separate question of whether LFPC was the agent of the Village. The subjective feelings of appellate litigants that an issue is "central" does not make it so. For various reasons, not

all arguments "litigated to this court" are decided by this court. The particular, and compelling, reason for the majority to dispense with the agency question is that the plain language of section 2–5(11) forecloses the issue. Thus, I am unable to appreciate what "guidance" the majority could hope to give those "at the administrative level" on what makes an agent or instrumentality of a governmental body for purposes of an exemption under section 2--5(11). There is no useful guidance for the majority to give on an issue that its construction of section 2--5(11) altogether strips of vitality in this court.

Perhaps the majority wishes to provide general illumination in the realm of agency law. I believe the majority errs in its exposition. The majority reasons that, as the Village could not have legally issued bonds in the amount necessary for the construction, LPFC could not be acting as the Village's agent in issuing its own bonds, because under "basic agency-law *** the principal is the only source of an agent's authority" (slip op. at 15). The majority cites an Illinois case, Merchants' National Bank of Peoria v. Nichols & Shepherd Co., 223 Ill. 41 (1906), and a section of American Jurisprudence on agency law. I presume the majority is paraphrasing the following underscored statements from American Jurisprudence:

"The authority of the agent is the very essence of the principal and agent relationship. Unless otherwise agreed, it includes only authority to act for the benefit of the principal, and the source of the authority is always the principal, never the agent.

***

An agent has no implied or apparent authority to do that which the principal would not be authorized to do personally." (Emphasis added.) 3 Am. Jur. 2d Agency §68, at 482-83 (2007).

Treatises are not binding on our courts (Illinois State Toll Highway Authority v. Amoco Oil Co., 336 Ill. App. 3d 300, 307 (2003)). This aside, I do not believe the underscored principles are appropriate for determining whether an agency relationship exists between the Village and LPFC.

The first principle, that "the source of the authority is always the principal, never the agent," is drawn from two cases: Alar v. Mercy Memorial Hospital, 208 Mich. App. 518, 529 N.W.2d 318 (1995), and Kuhn v. P.J. Carlin Construction Co., 274 N.Y. 118, 8 N.E.2d 300 (1937). In Alar, the plaintiff sought to bind a hospital to the acts of a physician who the hospital claimed was not an employee but an independent contractor, and whose acts the hospital claimed, alternatively, were not within the scope of the agency. In addressing the question whether, assuming the physician was the agent of the hospital, the particular act sued upon was within the physician's apparent authority, the court explained that "apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent" (Alar, 208 Mich. App. at 528, 529 N.W.2d at 323)--the proposition paraphrased by American Jurisprudence. In Kuhn, where the plaintiff sought to hold an employer accountable for a particular act of a party who was undisputedly its employee, the court, diminishing the import of the agent's own insinuations to third parties about his authority, remarked that "the power to act and bind a principal comes from the acts of the principal and not from his agent" (Kuhn, 274 N.Y. at 134, 8 N.E.2d at 306). This, presumably, was the concept that American Jurisprudence sought to encapsulate. Merchants' National Bank, standing for this same proposition, holds: "The source of authority is the principal, and the power *** can only be proved by tracing it to that source in some word or act of the alleged principal." Merchants' National Bank, 223 Ill. at 49. I fail to see what role this concept plays here. LPFC has not tried to base an agency relationship on anything other than the acts of the Village.

The second underscored principle, that "an agent has no implied or apparent authority to do that which the principal would not be authorized to do personally," is also inapplicable here because, by its terms, it restricts only implied or apparent authority, and the authority LPFC relies on is express, conveyed in the unequivocal declarations of the Village. The proper criteria for determining the existence of an agency relationship are " 'whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal' " (Oliveira-Brooks v. Re/Max International, Inc., 372 Ill. App. 3d 127, 134 (2007), quoting Anderson v. Boy Scouts of America, Inc., 226 Ill. App. 3d 440, 443 (1992)). This idea is perfectly intuitive. One can readily imagine an individual being held accountable for the acts of another who, though committing those acts while exercising a professional or trade license that the former lacked, was nonetheless subject to sufficient control that a principal-agent relationship existed between the two. Therefore, though the Village could not issue bonds in the amount that it created LPFC to issue, this does not preclude LPFC from being the agent of the Village. I express no opinion on whether LPFC was in fact the agent of the Village under these principles, because the issue is immaterial given the plain thrust of the statutory language.