2020 IL App (1st) 191170-U

No. 1-19-1170

May 26, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KATTIE LEE AUSTIN, | ) | Appeal from the Circuit Court Of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 18 CH 12662 |
| ILLINOIS STATE BOARD OF NURSING, DEPARTMENT OF PROFESSIONAL REGULATION, DIVISION OF PROFESSIONAL REGULATION, MARY SKOGLUND, MARK THOMPSON, JAY STEWART, DONALD SEASOCK, and STATE OF ILLINOIS, | ) | The Honorable Eve M. Reilly, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1        *Held*:  When a plaintiff voluntarily dismisses the remainder of a complaint following a dismissal with prejudice of part of the complaint, the doctrine of *res judicata* bars the plaintiff

from raising in a new proceeding any claim that could have been raised in the voluntarily dismissed proceeding.

¶ 2        Kattie Austin filed a complaint in 2018 listing as defendants the Illinois State Board of Nursing, the Department of Professional Regulation, the State of Illinois, Mary Skoglund, Mark Thompson, Jay Stewart, and Donald Seasock. The circuit court dismissed the complaint with prejudice, finding that the *res judicata* effect of a prior case barred the new complaint. Austin, *pro se*, argues on appeal that the defendants violated the Nurse Practice Act (225 ILCS 65/70-5 *et seq.* (West 2018)). She does not address the *res judicata* effect of the prior case. We affirm the circuit court's dismissal of the 2018 complaint.

¶ 3                                I. BACKGROUND

¶ 4        In 2016, Austin filed a complaint docketed as 16 L 8896, naming as defendants the Illinois State Board of Nursing (ISBN), the Department of Financial and Professional Regulation (IDFPR), the State of Illinois, Mary Skoglund, Mark Thompson, Jay Stewart, Donald Seasock, Thomas Decker, and Michael Reinstein. Austin sued because the IDFPR suspended her nursing license. Austin's complaint alleged that in 2011, Skoglund, who worked for ISBN, prosecuted a case against Austin, claiming that the State of Arizona had denied Austin's application for a nursing license because Austin included a false statement on her Arizona application. In her amended complaint docketed as 16 L 8896, Austin also alleged:

> "Plaintiff notified the ISBN and prosecutor Skoglund informing them that she had
>
> not been served a complaint from Arizona in Arizona or in the state of Illinois and
>
> that the allegation[s] from Arizona were false. ***

*** Upon examining Arizona's order of denial prosecutor Mary Skoglund knew that plaintiff had not been served in Arizona [because the service list used an incorrect address]. ***

*** Plaintiff hired attorney Thomas Decker to defend plaintiff's person and property against the complaint lodged on May 24, 2011. On October 4, 2013 attorney Thomas Decker wrote to ALJ Donald W. Seasock that prosecutor Mary Skoglund, counsel for the department, [']has advised the undersigned attorney that a judgement has been entered against my client, Ms. Austin, for failure to respond to the department's pleading.['] This is untrue[.] I had already answered the department complaint and denied the department's allegations on June 6, 2011 ***. Thomas Decker states that; [']until this week, neither she nor her undersigned attorney received or was aware of the department's motion[.'] *** *** Prosecutor, Mary Skoglund and ISBN repeatedly sent notices and orders to the wrong address ***.

*** Skoglund[] *** intentionally concealed the notices of hearing and directors order *** Administrative Law Judge Donald W. Seasock [held] formal evidentiary hearings with no board member present. Plaintiff was not notified of the hearing ***.

* * *

*** Plaintiff filed a complaint with ARDC against prosecutor Mary Skoglund *** accusing her of not properly notify[ing] plaintiff of hearings ***.

● * *

3

*** On November 30, 2015 Mark Thompson wrote to ARDC ***.

*** Mark Thompson used his position as deputy general counsel to persuade ARDC to squash plaintiff's complaint. ***

* * *

*** [Seasock wrote '] Kattie Austin is presently the holder of a certificate of registration as a pharmacy technician in the State of Illinois issued by the Department of Financial and Professio[na]l Regulation of the State of Illinois, said license is presently in an active status.[']  This is a manufactured false fact, plaintiff has never been licensed as, or employed as a pharmacy technician in any state ***.

* * *

*** Skoglund made false statements about plaintiff [that] on or about March 9, 2011, respondent's application for an Arizona registered professio[na]l nurse's license was denied[.]  This is a false statement with false manufactured date.  I did not apply for any license at all in the state of Arizona on or about March 9, 2011.***

* * *

*** Director Jay Stewart indef[i]nitely suspended plaintiff's nursing license on October 21, 2014[,] without evidence or proof of service.

*** Plaintiff was not served the notice of hearing on Sept[.] 22, 2014 or the final order of October 21, 2014.  Plaintiff found out that her license was suspended from her place of employment ***.  Plaintiff was never served.

* * *

4

*** Mark Thompson writes that plaintiff had two federal criminal cases. Arizona never stated that plaintiff had two criminal cases. ***

* * *

*** On November 30, 2010, the Arizona State Board of Nursing considered the application for the licensure of Kattie Lee Austin (applicant). Online it states that applicant submitted a registered nurse application for licensure by endorsement to the board. This is untrue ***. The license that I applied for and received was a temporary license." (Emphasis omitted.)

¶ 5    In case 16 L 8896, the circuit court entered an order in May 2018, that stated:

"1. Any and all claims against Illinois State Board of Nursing, the IDFPR, the State of Illinois, and ALJ Donald Seasock are dismissed with prejudice;

2. Any and all claims based on a violation 18 U.S. Code §241 are dismissed with prejudice;

3. All other claims are dismissed without prejudice and with leave to re-plead."

¶ 6    In July 2018, Austin made an oral motion for voluntary dismissal of the complaint in 16 L 8896. The circuit court granted the motion.

¶ 7    Austin filed the complaint now at issue, docketed as 2018 CH 12662, in October 2018. The 2018 complaint named as defendants ISBN, IDFPR, the State of Illinois, and four of the individuals named as defendants in 16 L 8896. She alleged that ISBN initiated a case against Austin "about a sister state complaint *** from the state of Arizona." Austin's 2018 complaint alleged:

"Plaintiff was never served this complaint in Arizona or in the state of Illinois. ***

*** Plaintiff answered the ISBN complaint on June 6, 2011 denying the allegations and the sister state of Arizona's *** complaint. The Arizona complaint accused plaintiff of the following. *** A. Applying for a license by endorsement when in fact plaintiff applied for and received a temporary license. B. Engaging in fraud, misrepresentation, or deceit in taking a licensing examination or on an initial or renewal application for a license or certificate. ***

* * *

*** Mary Skoglund knew that plaintiff had not been served in Arizona. ***

*** Thomas Decker wrote to ALJ Donald W. Seasock that prosecutor Mary Skoglund, counsel for the department, [']has advised the undersigned attorney that a judgement has been entered against my client, Ms. Austin, for failure to respond to the department's pleading.['] This is untrue[.] I had already answered the department complaint and denied the department's allegations on June 6, 2011 ***. Thomas Decker states that; [']until this week, neither she nor her undersigned attorney received or was aware of the department's motion.[']

***

*** Mary Skoglund's conduct was willful and she intentionally concealed the notices of hearing and director's order ***. Donald W. Seasock [held] formal evidentiary hearings with no board member present. Plaintiff was not notified of the hearing ***.

[Skoglund alleged, '] the complaint was filed and served by certified mail and also sent out to Ms. Austin by regular mail to her (respondent's) last known address on December 8, 2009.['] This is not true! I have never had a complaint filed by any nursing board in Dece[mb]er of 2009. ***

* * *

*** On November 30, 2015 Mark Thompson wrote to ARDC *** on prosecutor Mary Skoglund's behalf ***.

[Seasock wrote that he ']finds the following allegation of the complaint to be true: *** Kattie Austin is presently the holder of a certificate of registration as a pharmacy technician *** in the State of Illinois issued by [IDFPR], said license is presently in an active status.['] This is a manufactured false fact, plaintiff has never been licensed as, or employed as a pharmacy technician ***.

*** Skoglund proved up the complaint with evidence that she knew was false and ALJ Donald W. Seasock issued a recommendation based on her prove-up with no concrete evidence, with no proof of service and with no jurisdiction[.] This recommendation was put on the desk of director Jay Stewart ***.

* * *

*** Skoglund made false statements about plaintiff *** that; on or about March 9, 2011 respondents application for an Arizona registered profession[nal] nurse's license was denied ***. This is a false statement with false manufactured date. I did not apply for any license at all in the state of Arizona on or about March 9, 2011. ***

7

*** The order of denial was due to respondent's failure to answer a question regarding criminal convictions truthfully. There were no convictions ***.

*** Plaintiff answered the questions asked truthfully on January 26, 2010 when applying for the temporary license. ***

* * *

*** Decker wrote to ALJ Donald W. Seasock stating that prosecutor, Mary Skoglund had informed him that a judgement had been entered against his client Ms. Austin for failure to re[sp]ond to the department's pleadings. *** Thomas Decker states that neither he nor she (Ms. Kattie Austin) was aware of the motion ***.

* * *

*** Plaintiff was not served the notice of hearing on Sept[.] 22, 2014 or the final order of October 21, 2014. Plaintiff found out that her license was suspended from her place of employment. ***

* * *

 Mark Thompson writes that plaintiff had two federal criminal cases. Arizona never stated that plaintiff had two criminal cases. This intentional wanton statement to ARDC is not true ***.

* * *

8

*** Seasock directly caused the suspension of plaintiff's nursing license by giving a recommendation that he knew was based upon false evidence." (Emphasis omitted.)

¶ 8    The circuit court dismissed the complaint docketed as 2018 CH 12662 with prejudice, under section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2018)). Austin now appeals.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, Austin argues that the circuit court should have vacated IDFPR's decision suspending her nursing license. She does not address the issue of whether the *res judicata* effect of the decision in 16 L 8896 bars her complaint. We review *de novo* the dismissal of a complaint as *res judicata*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 11    "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). "*Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. [Citation.] Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 12    Austin named all of the defendants for the 2018 complaint as defendants to the 2016 complaint. We must affirm the dismissal of the 2018 complaint if it states the same cause of

action as the 2016 complaint, and if the court reached a final judgment on the merits of the 2016 complaint.  See *Hudson*, 228 Ill. 2d at 467.

¶ 13    *Rein* controls our decision here.  In *Rein*, the plaintiff sued the defendants for fraud and breach of fiduciary duty, seeking rescission of some security sales and other relief.  The circuit court dismissed the rescission counts with prejudice, and the plaintiff voluntarily dismissed the remainder of the complaint.  The plaintiff subsequently filed a new complaint against the same defendants for fraud and breach of fiduciary duty.  The circuit court found that the *res judicata* effect of the dismissal of the first complaint barred the second complaint.  The plaintiff appealed.  Our supreme court held:

> "Although there was not an adjudication on the merits of the common law counts in *Rein I*, the concept of *res judicata* is broader than plaintiffs suggest. If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. ***
>
> * * *
>
> Because the common law counts arise out of the same set of operative facts as the rescission counts, plaintiffs could have litigated and resolved these claims in *Rein I*. Having failed to do so, plaintiffs are barred by the doctrine of *res judicata* from attempting to raise and litigate them in *Rein II*, even though there was no adjudication on the merits of these claims in the prior suit." *Rein*, 172 Ill.2d at 338-39.

¶ 14     The *Hudson* court summarized: "*Rein* thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473.

¶ 15     Under the reasoning of *Rein*, the voluntary dismissal of the complaint in 16 L 8896 made the court's resolution of that case a final judgment on the merits. The restatement of the same facts from the complaint in 16 L 8896 as the basis for the complaint in 2018 CH 12662 shows that the two complaints arise from the same set of operative facts, and Austin could have raised in 16 L 8896 all claims raised in 2018 CH 12662. Accordingly, under *Rein*, we affirm the dismissal of the 2018 complaint.

¶ 16                              III. CONCLUSION

¶ 17     The circuit court entered a final judgment on the merits in favor of some specified defendants in 16 L 8896. When Austin voluntarily dismissed her remaining claims, the judgment in 16 L 8896 became a final judgment barring any new claims that Austin could have raised in 16 L 8896. The 2018 complaint alleged the same facts as the 2016 complaint, and sought relief against the same defendants named in the 2016 complaint. Accordingly, the *res judicata* effect of the final judgment in 16 L 8896 bars the complaint in 2018 CH 12662. We affirm the dismissal of the 2018 complaint.

¶ 18     Affirmed.