2022 IL App (1st) 210997-U
No. 1-21-0997
Order filed August 15, 2022

First Division

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | |
|---|---|
| KATTIE AUSTIN, | ) |
| | ) Appeal from the |
| Plaintiff-Appellant, | ) Circuit Court of |
| | ) Cook County. |
| v. | ) |
| | ) No. 19 CH 13510 |
| ILLINOIS DEPARTMENT OF FINANCIAL AND | ) |
| PROFESSIONAL REGULATION, and CECILIA | ) |
| ABUNDIS, in her official capacity as Acting Director of | ) Honorable |
| the Illinois Department of Financial and Professional | ) Alison C. Conlon, |
| Regulation, Division of Professional Regulation, | ) Judge, presiding. |
| | ) |
| Defendants-Appellants. | ) |

---

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:     Administrative decision denying plaintiff's application for a licensed practical nursing license affirmed where plaintiff did not show she was prejudiced by lack of proper notice and an opportunity to be heard and the denial was not clearly erroneous.

¶ 2     Kattie Austin represents herself in appealing a decision of the Director of the Department of Financial and Professional Regulation denying her application to practice as a licensed practical nurse (LPN). Austin held a registered nurse (RN) license, which the Department

suspended indefinitely in 2014 after learning Austin had provided false information on an application for a RN license in Arizona. The Director found that the suspension of Austin's RN license was grounds for denying her application for a LPN license under section 70-5(b)(7) of the Nurse Practice Act. That section permits the Department to refuse to issue a license for "[e]ngaging in dishonorable, unethical[,] or unprofessional conduct of a character likely to deceive, defraud or harm the public ***." 225 ILCS 65/70-5(b)(7) (West 2020) ("Act").

¶ 3        Austin filed a complaint for administrative review, arguing (i) the Department violated her due process rights by failing to provide proper notice and an opportunity to be heard before denying her application and (ii) improperly denied her application for a LPN license. The circuit court affirmed the Director's decision, finding that the Department adhered to due process requirements by sending notice that it intended to deny her application to her last known address and by email. The court also found the Department's decision was not against the manifest weight of the evidence under the Act.

¶ 4        Austin argues the Director's decision should be reversed given: (i) the Department violated her Due Process Rights by only sending email notice of its intent to deny her application and right to a hearing when she does not have an email address, and (ii) the Director's decision to deny her LPN application was clearly erroneous because her RN license was improperly suspended. Austin asks that we reverse, order the Director to issue the LPN license and the Department to pay damages.

¶ 5        The Department concedes Austin may not have received the email notice. Still, it argues lack of notice did not prejudice her inasmuch as (i) she would have been unable challenge the validity of the suspension of her RN license, which triggered the Director's denial of the LPN license application, and (ii) she was able to timely bring a complaint for administrative review

to challenge the denial of her application. The Department also asserts the decision to deny her application was not clearly erroneous

¶ 6 We agree with Austin—she was not given proper notice. But, we affirm due to Austin's failure to show the due process violation prejudiced her or that the Department's decision to deny the LPN application was clearly erroneous.

¶ 7         Background

¶ 8 Austin began her nursing career in 1985, obtaining an LPN license and an RN license two years later. Austin's LPN license expired in 1999, and she did not renew it. (An LPN assists in the nursing process under the guidance of a registered professional nurse or an advanced practice registered nurse (225 ILCS 65/50-10 (2020)); an RN may engage in the full scope of nursing (225 ILCS 65/60-35 (2020))). In 2010, Austin applied for a RN license in Arizona. In response to a question on the application, Austin denied she had ever been convicted or had prosecution deferred on a felony charge. Yet, an investigation by the Arizona State Board of Nursing revealed Austin (i) had been indicted on multiple charges, including fraud and swindling in federal court, (ii) had been found not competent to stand trial, and (iii) had prosecution deferred six months. Those charges were later dropped without prejudice. The Arizona investigation also revealed that Austin had been convicted of theft of services, a misdemeanor, in Cook County and sentenced to probation.

¶ 9 After the Arizona Board asked for additional information about the charges, Austin declined and told the Arizona Board she would withdraw her application. Nonetheless, the Arizona Board issued an order denying Austin's application, finding she violated several of the Board's rules, including committing fraud and deceit when applying for a license and committing an act that deceived the public.

¶ 10    In 2011, the Department filed a complaint against Austin under section 70-5(b)(10) of the Act (225 ILCS 65/70-5(b)(10)(West 2020)), which allows the Department to discipline a licensed individual who has been disciplined in another jurisdiction. After a hearing at which neither Austin nor her attorney appeared, the administrative law judge found the Department proved that the Arizona Board had denied Austin's application for a RN license by making false statements about her criminal history and failing to provide the additional information requested. The ALJ recommended the Department suspend Austin's RN license indefinitely for at least three years and fine her $500 for costs. The Illinois Board made the same recommendation to the Department, which adopted the recommendation and ordered Austin to surrender her RN license immediately.

¶ 11    In 2016, Austin filed a complaint in circuit court against the Illinois Board, the Department, the State of Illinois, and individual defendants challenging the suspension of her RN license. After the circuit court dismissed some claims with prejudice and others without prejudice, Austin voluntarily dismissed all remaining claims. She then filed a second complaint in 2018 against the same defendants, again challenging the suspension of her RN license. Again, the circuit court dismissed the complaint. The appellate court affirmed on *res judicata* grounds. *Austin v. Illinois State Board of Nursing*, 2020 IL App (1st) 191170-U.

¶ 12    While her RN license was suspended, Austin applied for the LPN license. The Department issued a notice of intent to deny license letter ("notice of intent letter") stating that the Department intended to deny her application because her RN license was currently suspended for a violation in another state, grounds for denial under section 70-5(b)(7) (225 ILCS 65/70-5(b)(7) (West 2020)). That section allows the Department "to refuse to issue or to renew *** or take other disciplinary or non-disciplinary action as the Department deems appropriate

*** with regard to a license" when an applicant has engaged in "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." 225 ILCS 65/70-5(b)(7) (West 2020). The notice of intent letter listed Austin's home and an email address and stated it had been sent to Austin via email.

¶ 13    The Department issued a nearly identical notice of intent letter a few days later, which omitted an email address for Austin. Nonetheless, the proof of service again stated it had been sent via email. Austin asserts she does not have an email address and did not receive either notice.

¶ 14    Shortly thereafter, the Department Director issued a final administrative decision, sent to Austin's home address, denying her application for an LPN license. The order stated, in part, that the Department sent the notice of intent letter to Austin at her address of record and that she had not filed a petition for a hearing within the designated time. Austin filed a complaint for administrative review in the circuit court, asserting (i) the Department violated her due process rights by failing to provide proper notice or a hearing before denying her application; and (ii) the Department erred in denying her LPN application as it had improperly suspended her RN license.

¶ 15    The circuit court affirmed the Department's order denying Austin's application, finding that the Department provided proper notice under the Administrative Review Law and the Nurse Practice Act by sending the notice of intent letter to Austin's last reported address. The court also found no violation of Austin's due process rights because (i) she was given proper notice and an opportunity to request a hearing but did not do so, and (ii) the decision to deny her application was not clearly erroneous because the administrative record is "replete" with

evidence that Austin's RN license was suspended for the violations in Arizona, which was grounds for denial under section 70-5(b)(7).

¶ 16                                                    Analysis

¶ 17                                                  Due Process

¶ 18        "[A]n administrative proceeding is governed by the fundamental principles and requirements of due process of law. In administrative proceedings, notice does not need to be as precise or detailed as in normal court proceedings. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 93 (1992). " An administrative hearing comports with due process where the parties are given the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon evidence." *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 42. A court will find a due process violation only if prejudice is shown. *Id*. A claim that an administrative proceeding violated an individual's right to due process presents a question of law and, therefore, is subject to *de novo* review. *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 155 (2002).

¶ 19        Although the circuit court found that the Department sent the notice of intent letter to Austin at her last mailing address, the record shows the Department attempted to serve Austin with the notice by email only. Austin asserts she does not have an email address and never received the notice. The Department presents no evidence to refute her. So, Austin was not provided notice or an opportunity to be heard that comported with due process requirements before the Department denied her application.

¶ 20        Next, we must then determine whether this due process violation prejudiced her. The Department says "no." It maintains that had there been a hearing, Austin could not present evidence that would have resulted in a different outcome. Simply put, the Department argues

that if Austin had filed a petition for a hearing, she would have had to "state with specificity the particular reasons why [she] believes that the action by the Division to deny licensure was incorrect." 68 Ill. Admin. Code 1110.30(c). The Department argues Austin could not make that showing because her RN license was suspended, which constituted a continuing violation of section 70-5(b)(7) of the Nurse Practice Act (225 ILCS 65/70-5(b)(7) (West 2020), permitting the Department to deny her application. The Department also contends that because this court found that issues regarding the proceedings leading to the suspension of her RN license are barred by the doctrine of *res judicata* (*Austin v. Illinois State Board of Nursing*, 2020 IL App (1st) 191170-U)), she would be precluded from challenging the validity of the suspension, the basis on which the Director made the determination.

¶ 21    We disagree. While Austin's RN license did remain suspended, she could have made other arguments to support her contention that she should be issued the LPN license. Section 70-5(b)(7) permits the Department to deny a license to an applicant who has engaged in "dishonorable, unethical or unprofessional conduct." Without challenging the validity of the suspension of her RN license, Austin could have made arguments that the Department should not have denied her LPN license because the suspension did not constitute dishonorable, unethical, or unprofessional conduct. These arguments may not be successful, but by failing to provide Austin notice, the Department denied her the opportunity to make them.

¶ 22    Moreover, *res judicata* would not apply to prevent her from making those arguments. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). "*Res judicata* bars not only what was actually decided in the first action but also whatever could

have been decided. [Citation.] Three requirements must be satisfied for res judicata to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 23        In *Austin v. Illinois State Board of Nursing*, 2020 IL App (1st) 191170-U, this court affirmed the dismissal of Austin's 2018 complaint challenging the suspension of her RN license, finding that her claims barred by *res judicata* for the reason that her 2016 complaint became a final judgment after her claims were dismissed with prejudice or Austin's voluntary dismissal of the remaining claims. *Id*. ¶ 17. Thus, Austin was precluded from bringing in a subsequent action, the same claims or claims that could have been brought in the 2016 case. But *res judicata* does not prevent her from raising issues concerning whether the suspension of her RN license was grounds for denying her LPN license.

¶ 24        Regardless, we agree with the Department that Austin has failed to show she was prejudiced. As the Department notes, Austin received the Director's final administrative decision, filed a complaint for administrative review, and had an opportunity to challenge the Director's findings that suspension of her RN license constituted "dishonorable, unethical[,] or unprofessional conduct" under the Act and was sufficient grounds for denying her LPN application. Austin provided no arguments to refute that finding. Instead, on administrative review and before this court, she continues to rely on her contention that the Department erred in suspending her RN license rather than arguing that the Director erred in concluding that her suspension as an RN was "dishonorable, unethical or unprofessional conduct" under the Act. In short, Austin has not shown that had the Department properly served her with the notice of intent letter and had she timely requested a hearing, she could have stated "with specificity the

particular reasons why [she] believes" the Director's decision to deny her application was incorrect. Thus, the due process violation did not prejudice Austin.

¶ 25                    Department Decision Was Not Clearly Erroneous

¶ 26        In reviewing the Department's decisions, we consider the Administrative Review Law (735 ILCS 5/art. III (West 2020)). As our supreme court has explained, "[t]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). An administrative agency's findings on questions of fact are "deemed to be *prima facie* true and correct" and thus, a reviewing court's task is limited to "ascertain[ing] whether the findings and decision of the agency are against the manifest weight of the evidence." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Administrative decisions based on questions of law are reviewed *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Decisions based on mixed questions of fact and law are subject to reversal if clearly erroneous. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 27        "Mixed questions of fact and law are 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees, Council 31*, 216 Ill. 2d at 577 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, (1982)). As the central dispute concerns whether the Department correctly found that the suspension of Austin's RN license was grounds for denying her LPN application under the

Act, the case presents mixed questions of fact and law, we will reverse the Department's decision only if clearly erroneous. *City of Belvidere*, 181 Ill. 2d at 205. This is a demanding standard that grants significant deference to the experience and expertise of the agency. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395. We accept the agency's findings "unless we come to the definite and firm conviction that a mistake has been committed." *Illinois Beta House Fund Corp. v. Department of Revenue*, 382 Ill. App. 3d 426, 429 (2008).

¶ 28    The Act gives the Department broad discretion in determining whether to issue a license. Under section 70-5(b)(7), the Department may "refuse to issue or to renew \*\*\* or take other disciplinary or non-disciplinary action as the Department deems appropriate \*\*\* with regard to a license" when an applicant has engaged in "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." 225 ILCS 65/70-5(b)(7) (West 2020). As noted, the Department denied Austin's LPN application because it had suspended her RN license for providing false information in Arizona, which could plainly be deemed "unprofessional conduct of a character likely to deceive, defraud or harm the public.

¶ 29    On that account, the Department's decision to deny Austin's LPN application was not clearly erroneous.

¶ 30    Affirmed.